OPINION OF THE COURT
Richard Lee Price, J.
By this application petitioner, the income beneficiary of an inter vivos trust established by his father on February 13, 1960, seeks a judgment permitting and directing the trustee to either “restructure” the trust to increase the amount of income available for payment to him or, in the alternative, to distribute to him the sum of $10,000 annually, until the year 1985, from that portion of the principal which consists of income which, pursuant to the terms of the trust instrument, the trustee had accumulated and added to principal until sometime in 1969 when petitioner began matriculating as a full-time student at Hofstra University.
The purpose of the trust, as stated in the preamble to the governing instrument, was to make “certain financial provisions” for petitioner, “and for his education.” To this end, it was originally funded solely with the following property:
*885 (a) Two United States Treasury bonds, each in the sum of $10,000, bearing interest at 4% and maturing on February 15, 1980;
(b) Six United States bonds, each in the sum of $10,000, bearing interest at 3 Va% and maturing on May 15, 1985;
(c) Two United States Treasury bonds, each in the sum of $10,000, bearing interest at 3 Vt.% and maturing on February 15, 1990; and
(d) Two United States Treasury bonds, each in the sum of $10,000, bearing interest at 3% and maturing on February 15, 1995.
By paragraph (d) of article first of the trust agreement, the trustee was specifically directed to retain all of the afore-mentioned bonds originally received by it until their respective maturity dates and, upon said dates, the net proceeds thereof were to be paid to petitioner. In the event any of the original bonds were “called” prior to maturity (which event does not appear to have occurred), the trustee was directed to reinvest the proceeds received therefrom in United States Government bonds of not less than $1,000 each, maturing May 15,1985 and bearing interest at 3 Va%, if available, or, if not available, any United States Government bonds maturing after 1985, and was further directed to distribute to petitioner the bonds purchased pursuant to such reinvestment authority at the time the original “called” bonds would have matured had the “call” not occurred.
In addition to the foregoing, the trustee was directed by paragraphs (a) and (b) of article first to accumulate all of the net income from the trust property and add it to principal and invest such additions to principal in United States Government bonds of not less than $1,000 each, maturing May 15, 1985 and bearing interest at 3 Vi%, if available, or, if not available, in any United States Government bonds maturing after 1985. Such accumulations and investments of income were to continue either until petitioner attained the age of 17 years and was matriculating as a student on a full-time basis, in an institution of higher learning above the level of high school or, in the event petitioner failed to meet such student matriculation *886 requirements, until petitioner attained the age of 21 years. The accumulations and investments of income as aforesaid were to end when either of the foregoing conditions were met and, thereafter, all net income from the trust property was to be distributed to petitioner on a quarter-annual basis. Moreover, pursuant to paragraph (c) of article first, the portion of the trust principal which, as of May 15,1985, represents the investment of accumulated income which has been added to principal, in accordance with the foregoing provisions, is to be distributed to petitioner on said date.
It appears that, in accordance with the provisions of the trust agreement as outlined above, the trustee accumulated and invested all of the trust income until the year 1969 when petitioner, at the age of 17, entered Hofstra University as a full-time student. From that time to the present, there have been no accumulations of income and all income has been paid directly to petitioner. Currently, he alleges that he is receiving an annual income from the trust amounting to the sum of $4,873.75. In addition, he discloses that he is presently employed by the Liberty Mutual Insurance Company at a salary of $12,000 per annum and that, following a seven-month training period, his salary from such employment, plus commissions, is expected to amount to approximately $16,000 per annum. It further appears that petitioner is presently 29 years of age, was married in June, 1980, became the father of a child on February 8, 1981, and that his wife is presently unemployed.
At present, the trust assets consist of the original bonds referred to in (b), (c) and (d) above, plus bonds purchased by the trustee with the accumulated trust income in accordance with the provisions of the trust instrument as outlined above. These latter securities consist of (1) United States Treasury bonds having a total face amount of $43,500, bearing interest at 3 XA% and maturing on May 15, 1985; and (2) United States Treasury bonds having a total face amount of $6,000, bearing interest at 3 xh% and maturing on February 15, 1990. As heretofore indicated, all of these bonds (or the proceeds thereof) purchased with accumulated trust income are, under the provisions of para *887 graph (c) of article first, distributable to petitioner on May 15, 1985.
What petitioner is actually seeking by this application is an authorization from this court permitting the trustee to sell all of the afore-mentioned bonds presently held by it and to reinvest the proceeds in other United States Treasury bonds with maturity dates similar to those of the original bonds and the bonds purchased with accumulated income, but with substantially higher income yields. The difficulty with such request, however, is that it contravenes the clear and explicit directions of the trust instrument itself and, if granted, would be tantamount to a substantial refabrication of such instrument by the court. This, of course, the court may not do (see Matter of Bisconti, 306 NY 442, 445; Matter of Watson, 262 NY 284, 294; Matter of Fabbri, 2 NY2d 236, 244-245); especially so where, as here, the settlor is deceased and his trust instrument explicitly provides, in article twelfth, that the trust created by him shall be “irrevocable” and that he “reserves no right or power of any kind to alter, amend, modify or revoke any of the terms or conditions or provisions of this trust in any way” (see Culver v Title Guar. & Trust Co., 296 NY 74; Ridge v Felt, 267 App Div 777; Cook v City Bank Farmers Trust Co., 3 AD2d 634; Matter of Race, 9 Misc 2d 155; Syracuse Trust Co. v Fuller, 140 Misc 918, 926; Kornfeld v Mode, 78 NYS2d 847). As already indicated, except in certain clearly defined circumstances not here relevant, the trustee is specifically directed to retain both the bonds with which the trust was originally funded as well as those purchased with the accumulated income “until their respective maturity dates” and to “pay over to [petitioner] the net proceeds of the bonds at their respective maturity dates”. It is quite apparent, then, that to grant petitioner’s request for authorization to the trustee to effectuate an immediate sale of all of these bonds and reinvestment of their proceeds would be to permit a direct violation of the express terms of the trust — a course which this court is powerless to take, even if there were compelling reasons motivating it to do so. Although it is urged by petitioner’s counsel that the court’s power under EPTL 7-1.6 to permit an invasion of principal for the benefit of an income benefi *888 ciary in the circumstances therein provided “includes and embraces” the power to grant such relief, such contention cannot be sustained. The power to invade trust principal and apply it for the benefit of an income beneficiary in the limited circumstances authorized by such statute and the power to permit a sale and reinvestment of such principal in direct contravention of the terms of the trust instrument are two totally separate and distinct concepts, and it cannot reasonably be concluded that the former embraces the latter. Accordingly, petitioner’s request for a “restructuring” of the trust is denied.
It is further concluded that petitioner’s alternative request for relief herein must also be denied. Such request is predicated upon the provisions of EPTL 9-2.2 (subd [a]) which permits this court to direct that a suitable sum from accumulated trust income be applied for the support of a person for whose benefit the trust instrument directs such accumulation upon a finding that such person is “without other sufficient means to support * * * himself”. The relief available under these provisions, however, extends solely to application of income — not principal (see Rohan, Practice Commentary, McKinney’s Cons Laws of NY, Book 17B, EPTL 9-2.2,1980-1981 Pocket Part, p 167). Here, the trust instrument did more than merely direct an accumulation of income. It expressly directed, in addition, that such accumulated income be concurrently added to principal and invested as such. Accordingly, by virtue of the express provisions of the subject instrument, when, in 1969, all such accumulations ended upon occurrence of the afore-mentioned stipulated contingencies, the income thus accumulated was thereafter required to be regarded as principal. It follows, then, that the alternative relief which petitioner here requests must properly be treated as an application for an invasion of principal or corpus of the trust. Moreover, since such an invasion is not authorized by the provisions of the trust instrument, it may be allowed, if at all, only under the provisions of EPTL 7-1.6. That section divides applications such as this into those relating to express trusts created prior to the June 1,1966 effective date of its predecessor, section 15-a of the Personal Property Law (EPTL 7-1.6, subd [a]) and those relat *889 ing to trusts created subsequent to such effective date (EPTL 7-1.6, subd [b]). Since the trust here was created prior to such date, the only relief possibly available to petitioner is that afforded by the provisions of EPTL 7-1.6 (subd [a]).
The latter subdivision provides, in pertinent part, that a court having jurisdiction of an express trust of the kind here under consideration “may in its discretion make an allowance from principal to any income beneficiary whose support or education is not sufficiently provided for, to the extent that such beneficiary is indefeasibly entitled to the principal of the trust or any part thereof or, in case the income beneficiary is not entitled to the principal of the trust or any part thereof, to the extent that all persons beneficially interested in the trust are adult and competent and consent thereto in writing”.
Upon close analysis of the provisions of the subject instrument, it must be concluded that no relief is available to petitioner under the above-quoted provisions of EPTL 7-1.6 (subd [a]). Paragraph (e) of article first of the trust agreement provides as follows: “Upon the death of [petitioner] before he has become entitled to receive all of the trust principal as hereinbefore provided, the then remaining trust principal and undistributed net income shall be paid and distributed to such of the surviving spouse and issue of [petitioner] and in such shares as may be designated by [petitioner] in his Last Will and Testament. In default of such appointment or if only partially appointed, the then remaining trust principal and undistributed net income shall be paid and distributed to the estate of [petitioner].”
The meaning of the word “estate”, as used in the quoted paragraph, is, as explained in Matter of Sacks (73 NYS2d 160, 161), “to be ascertained from the circumstances under which it is used * * * [t]he word has not been limited to property passing under a will or *** intestacy. * * * Tt should be construed in a sense which will accomplish and not defeat the purpose of the instrument in which it is used’ * * * It is decedent’s intention that is controlling, not the legal definition of any word isolated from the text of the will” (see, also, Matter of Staplin, 123 NYS2d 476). In the *890 context of the subject trust instrument, it is quite apparent, first of all, that the statutory definitions of the word “estate” contained in EPTL 1-2.6 and SCPA 103 (subd 19) are inapposite. In the ordinary course, when one makes a disposition of personal property to the “estate” or to the “legal representatives of the estate” of another, he is usually presumed to have intended that such property be distributed either to the legatees under the latter’s will or, in the event of his intestacy, to his statutory distributees (see 80 Am Jur 2d, Wills, § 1195, and cases therein cited). Such presumption must yield, however, where it clearly appears from the context of the disposing instrument that its author intended a different meaning (see Matter of Weller, 7 Misc 2d 366). In this court’s view, such is the situation here. The terms of the testamentary power of appointment granted to petitioner by the above-quoted provisions of paragraph (e) of article first in the event of his death before receiving all of the trust principal expressly limit the classes of persons in whose favor such power may be exercised to petitioner’s “surviving spouse” and “issue”. Having thus specifically indicated his intention to circumscribe the permissible classes of appointees under such power, it would be too anomalous to suppose that the settlor could still have intended that his son should nevertheless be at liberty, at his option, to make a will deliberately ignoring such intention and direction, failing to exercise such power, and bequeathing the remaining trust principal to anyone he might choose, including strangers to his family circle (subject, of course, only to the possible right of election of a spouse who might survive him). Such a scenario would, of course, clearly be possible if the word “estate” were here construed to include the legatees under petitioner’s will. It seems far more reasonable, then, to conclude, particularly in light of the settlor’s manifest primary concern that his son’s surviving spouse and issue be adequately protected and provided for in the event of his premature demise, that, in limiting the alternative disposition of trust principal to his son’s “estate”, to take effect only if the latter failed to exercise his power of appointment, the settlor simply intended that such prop *891 erty should, in such eventuality, pass to petitioner’s statutory distributees.
In light of the conclusions just reached with regard to the settlor’s use of the word “estate”, it becomes manifest that petitioner is not “indefensibly entitled” to the remaining principal of the subject trust within the purview of EPTL 7-1.6 (subd [a]). In the context of such statute, the term “indefensibly entitled” was undoubtedly intended to have essentially the same meaning as that accorded by the provisions of EPTL 6-4.7 to the term “indefensibly vested”. One of the distinguishing characteristics of an “indefensibly vested” future estate in personal property, however, is that there must be a certainty that the person to whom it is limited will either himself eventually become entitled to its full possession and enjoyment or, if he dies before termination of the preceding estate, that such possession and enjoyment will eventually come either to his legatees (if he leaves a will), his distributees (if he dies intestate), or his inter vivos transferees (if he makes a gift or assignment of his interest prior to his death) (see Restatement, Property, § 157, Comment f; 9A Rohan, NY Civ Prac, par 6-4.7 [3], [4]; Glasser, Practice Commentary, McKinney’s Cons Laws of NY, Book 17B, EPTL 6-4.7, pp 90-92). Here, of course, as has been noted, the trust instrument gives petitioner no authority to bequeath his interest in the trust principal in the event of his death prior to the stipulated dates. Moreover, article third thereof also contains an express prohibition against any assignment by him of such interest prior to said dates, and such prohibitions have been recognized as valid (see Matter of Vought, 25 NY2d 163). In the indicated circumstances, then, petitioner’s interest in the remaining trust principal may not be regarded as absolutely or indefeasibly vested. Under well-settled principles, it should properly be construed as vested, but subject to defeasance in favor of his statutory distributees in the event of his death prior to the stipulated dates without having exercised his testamentary power of appointment (see Matter of O’Hanlon, 27 NYS2d 889, and cases cited therein).
Accordingly, the only remaining basis upon which relief to petitioner under the provisions of EPTL 7-1.6 (subd [a]) *892 may validly be predicated is “to the extent that all persons beneficially interested in the trust are adult and competent and consent thereto in writing” (see Matter of Rotermund, 61 Misc 2d 324). It is manifest, of course, from the foregoing construction of the subject instrument, that petitioner’s statutory distributees have a contingent remainder interest in the trust principal. It is likewise apparent that, by virtue of such status, they must be regarded as “persons beneficially interested” therein (Schoellkopf v Marine Trust Co. of Buffalo, 267 NY 358, 362; Matter of Dodge, 25 NY2d 273). However, it being impossible to presently determine who petitioner’s distributees will be at the time of his death (see Matter of Decker, 13 Misc 2d 121, 124; Matter of Stevens, 282 App Div 571, 572, affd 307 NY 742), it is also quite obvious that their consents cannot be obtained. Accordingly, it must be concluded that no relief whatever is available to petitioner under the provisions of EPTL 7-1.6 (subd [a]) and that, in consequence, his entire application herein must be, and is, denied in all respects.
Even assuming, ad arguendo, however, that petitioner’s lack of indefeasible entitlement to the remaining principal of the trust were not an insuperable obstacle to the granting of his requested invasion of principal, this court is nevertheless of opinion that no adequate warrant for the exercise of its discretion to grant such relief has been shown.
It should be observed, first of all, that relief under EPTL 7-1.6 (subd [a]) may be granted only when the court “is satisfied that the original purpose of the creator of the trust cannot be carried out and that such allowance effectuates the intention of the creator.” Professor Rohan, in his practice commentary to this statute (McKinney’s Cons Laws of NY, Book 17B, EPTL 7-1.6, 1980-1981 Pocket Part, p 71), suggests that the quoted language should not be taken literally, but should instead be interpreted “as a form of cy pres for private trusts and the question posed as ‘would the settlor have approved of this corpus invasion, had he thought about it, although we are fairly certain that he did not think about it.’ ” From this court’s analysis of the instrument at bar, however, it cannot be concluded with any reasonable degree of certainty that the settlor did *893 not think about the question of invasion of principal. On the contrary, the general scheme of the entire instrument as outlined above rather strongly suggests that he may well have considered and rejected it in favor of judiciously timed periodic distributions of principal between the years 1980 and 1995, when petitioner would be between the ages of 28 and 43, and his need for increased financial assistance presumably more pressing.
Though petitioner claims that it was his father’s intent, in creating this trust, to provide him, during the trust period, with sufficient income to maintain his “usual and customary standard of living”, the provisions of the trust instrument itself, by which this court must alone be guided (at least in the absence of ambiguous or equivocal language — not here present), give no indication whatever that such was the settlor’s intent; nor, for that matter, has petitioner himself provided any relevant facts to enable this court to intelligently evaluate what such living standard might be. In any event, it is clear that the future income which the trust would generate was readily ascertainable by the settlor, at the time he created the trust, by means of rather simple mathematical computations. Moreover, it is not reasonable to assume, as petitioner suggests, that his father, in making financial provisions for him in 1960, could not have anticipated that the purchasing power of such income might be substantially eroded in the ensuing two decades through the ravages of inflation. Most mature adults, even in 1960, had already experienced, and, thus, were fully cognizant of the detrimental effects such phenomenon could wreak upon their living standards and financial aspirations. Though it may be true that neither they, nor the settlor here, could reasonably be imputed with the prescience to predict the true extent of its actual severity during the years in question, that is not really germane to our inquiry here. Here the relevant consideration is simply this: would the settlor, when he created this trust in 1960, have approved of the requested invasions of principal had he then considered such question?
As already indicated, he most surely must have recognized that, in view of the limited resources available to him for the funding of the trust, its income would, at all events, *894 be wholly insufficient to fully meet his son’s economic needs when the latter reached his late 20’s and early 30’s; i.e., the time when he would be most likely to marry and begin the raising of offspring. With this in mind, his most immediate concern, as evidenced by the provisions already outlined, seems to have been that the principal be retained in investments affording the utmost assurances of safety and security, and that, during his son’s minority, the income be accumulated and likewise placed in the same type of investments. For the longer run, when his son’s needs might be expected to be the most urgent, it seems most probable that he intended simply to try to alleviate them as best he could, i.e., through the afore-mentioned provisions for periodic distributions (rather than invasions) of the principal. Moreover, in light of his careful timing of these distributions and his provision for payment over of the major share in 1985 when his son reached the age of 33, it seems highly unlikely that he would have sanctioned any additional incursions upon corpus between the years 1980 (when a smaller distribution was provided for) and 1985 except, perhaps, in the event of a serious medical or other similar emergency having a substantial adverse impact upon his son’s ability to provide for his own basic needs and those of his dependents. Here, however, there has been no showing whatever that any such emergency situation exists. On the contrary, petitioner’s appeal to this court’s discretion rests primarily upon the recent United States Department of Labor statistics indicating the steep rise in the Consumer Price Index and his conclusory averment that his “salary and trust income will not be sufficient to enable him to provide adequate support for the family household”. Neither he nor his counsel, however, make any mention of the fact that he presumably received a distribution from the trust in the sum of $20,000 sometime in 1980 when two of the Treasury bonds which formed part of the original corpus matured and became payable. Petitioner’s income from such funds, together with his anticipated present income from his employment and the trust would thus appéar to easily total well in excess of $20,000 per year — a sum which, in this court’s view, would not only belie any claim of economic emergency, but *895 would, indeed, at least at the present time, preclude any finding of serious economic need as well (see Matter of Smallen, 86 Misc 2d 949).
Accordingly, for all of the reasons indicated, the application is denied and the petition dismissed.