OPINION OF THE COURT
Renee R. Roth, S.
At issue in these companion proceedings is whether a *204 grantor retained income trust (GRIT) can be reformed to qualify as a shareholder of a subchapter S corporation under Internal Revenue Code (26 USC) § 1361 (c) (2) (A) (i).
By agreement dated December 20, 1988, Ronald O. Mainzer and his wife Sari Mainzer each created an irrevocable trust with virtually identical provisions. In each case, the grantor receives all the net income of the trust until such trust terminates upon the expiration of 9 years and 11 months after the creation of the trust or the earlier death of the grantor. The remaindermen of the trust are the children of the grantor or, if not living, their issue, per stirpes. The trustee, Alan Fersko, is not a relative of the family.
As executed, each trust qualified as a grantor retained income trust pursuant to section 2036 (c) (6) of the Internal Revenue Code. As required, the trusts provided that (1) the grantor’s right to receive amounts is determined solely by reference to the income from the property held in trust; (2) such right does not extend beyond a period of 10 years; (3) the income beneficiary is the same person who transferred the property to the trust and (4) the income beneficiary is not a trustee. Although subdivision (c) of section 2036 has since the commencement of this proceeding been repealed (see, Revenue Reconciliation Act of 1990, Pub L 101-508, § 1160 [a]), all estate freezes effected by statutory GRITs are grandfathered.
A GRIT is a commonly used "estate freeze” technique which permits an older generation of a family to pass along future appreciation of family owned corporations or partnerships to a younger generation at considerable tax savings. Such savings result from splitting the assets used to fund the trusts into two parts, one, an income interest which the grantor retains, the other, a remainder interest which is passed on to a younger generation of the grantor’s family. The gift tax is assessed on the present value of the remainder interest. If the grantor survives the trust term, the remainder interest (including appreciation) passes to the remaindermen without any further transfer tax. If the grantor dies during the trust period, the trust principal, although still distributed to the remaindermen, is nonetheless included in the grantor’s estate for Federal estate tax purposes. Thus, most trust instruments also provide that if the grantor dies during the trust term, the trust corpus reverts to the grantor’s estate. Such a contingent reversionary interest has two benefits, viz., it permits the grantor to make a different disposition of the corpus and it *205 entitles the grantor to an additional gift tax discount based on his or her actuarial life expectancy.
As will be discussed, it is the absence of this contingent reversionary interest from the Mainzer trusts that gives rise to this proceeding.
The initial drafts in 1988 of the Mainzer trusts had included such a reversionary interest in each grantor. Each draft had provided that if the grantor died during the period of the trust, the trust would terminate and the principal of the trust would revert to the donor’s estate. But the addition of subdivision (c) (6), as amended by the Technical Corrections and Miscellaneous Revenue Act of 1988 (Pub L 100-647), created a concern among tax practitioners that any reversionary interest in a GRIT, including a contingent reversion, would disqualify such trust as a GRIT for violating the requirement that the grantor’s right to receive distributions must be "determined solely by reference to the income from the property held in trust”.
Consequently, the trust agreements were redrafted and as executed in December 1988, such indentures eliminated the reversionary interest in the grantors.
However, the existence of a reversionary interest in the grantor of a trust was necessary to qualify such trust as a shareholder in a subchapter S corporation (Internal Revenue Code § 673). As noted earlier, the principal of the Mainzer trusts consists of shares in S corporations which long prior to 1988 had elected to be taxed as such S corporations. For a trust to be a shareholder of an S corporation, the entire trust (both income and principal) must be treated as being owned by an individual (Internal Revenue Code § 1361 [c] [2] [A] [i]; §§ 671-678). Under the present trust agreements, since they did not retain any interest in principal, the grantors are not deemed to be owners of the corpus of the trusts.
Thus, the executed trust agreements qualified such trusts as GRITs pursuant to Internal Revenue Code § 2036 (c) (6) but disqualified such trusts as shareholders of the S corporations and jeopardized such corporations’ tax status. The loss of subchapter S status would result in higher taxes to the S corporations (at the corporate and individual level) and double taxation when the real property owned by the S corporations is sold.
On August 31, 1989, some eight months after the creation of the Mainzer trusts, the Internal Revenue Service issued guide *206 lines (IRS Notice 89-99). As applied to the statutory GRITs, such guidelines provided, in relevant part, that in determining whether a trust qualifies "the Service will disregard a contingent reversion with respect to trust corpus if at the time the GRIT is created, the value of such reversion does not exceed 25 per cent of the retained income interest” (id., at 40-41).
The trustee of the two Mainzer trusts thus requests the court to reform such trusts by restoring the paragraph contained in each original draft which provided that if the trust terminated before the end of its term because of the death of the grantor, the principal of the trust would revert to the estate of the grantor. Since the Mainzer trusts meet the requirements of the guidelines in that the value of the reversionary interest would be less than 25%, such reformation would qualify each trust as a GRIT as well as a shareholder of the S corporations permitting such corporations to retain their subchapter S status for income tax purposes.
Under EPTL 7-1.9 an irrevocable inter vivas trust can be amended or revoked only upon the consent of all persons interested. Although the grantors and their two adult children, Barry Mainzer and Lynn Pacher (the presumptive remaindermen of the trusts), have consented to the amendment proposed by the trustee, the consent of Lynn’s three minor children (contingent remaindermen of both trusts) is also required (Matter of Dodge, 25 NY2d 273, 275; Matter of Roth v Lipton, 73 AD2d 560). But the decisions hold that if the interests of such infants are substantially impaired, neither a general guardian nor a guardian ad litem can consent on the infants’ behalf (Matter of Michael, 70 Misc 2d 161, affd 39 AD2d 865). Reformation of the trust to create a reversionary interest in the grantor of the remainder would probably substantially impair the interests of the infant grandchildren.
The guardian ad litem appointed for the grandchildren, Professor Jerome H. Manning, however, suggests an amendment to the Mainzer GRITs which would qualify such trusts as shareholders of the subchapter S corporations without affecting to any degree the interests of the infant contingent remaindermen. As he explains, creating a reversionary interest in the grantor is not the only method by which a statutory GRIT can be qualified as a shareholder of an S corporation. The same result may also be achieved by reforming the trust to create a nonfiduciary power of administration in another person, not a family member, giving such person the right to vote or direct the voting of the stock held by the trusts. Under *207 section 675 (4) of the Internal Revenue Code, the grantor will then be treated as the owner of the corpus of the trust for income tax purposes as long as the holdings of the grantor are significant with respect to voting control.
Such amendment of the trusts will not affect adversely any interest of the contingent minor remaindermen. But it will enable the trusts to qualify as shareholders in the subchapter S corporations.
Although it appears that the grantors may simply amend their trusts to include the clause suggested by Professor Manning (see, Matter of Cord, 58 NY2d 539; Matter of Zemsky, NYLJ, Dec. 9, 1988, at 33, col 3; Matter of Morgan, NYU, May 4,1989, at 28, col 2), there is ample precedent for judicial reformation of the trusts to accomplish the same purpose.
The court, therefore, approves the reformation of the two trusts to add to each trust the clause recommended by Professor Manning. Such a reformation of trusts is well supported by precedent (Matter of Martin, 146 Misc 2d 144; Matter of Choate, 141 Misc 2d 489; Matter of Khadad, 135 Misc 2d 67; Matter of Lepore, 128 Misc 2d 250; Matter of Avery, 124 Misc 2d 601; Matter of Stalp, 79 Misc 2d 412). Moreover, the court has the authority to authorize a fiduciary to exercise any power which is necessary for the proper administration of the trust (EPTL 11-1.1 [c]).