*699 OPINION OF THE COURT
Eve Preminger, S.
This uncontested application to split a trust (EPTL 7-1.13) is coupled with a request to relax investment restrictions set forth in the trust agreement with respect to one of the split-off trusts.
In 1977, Harvey R. Siegel created an inter vivos trust funded with insurance on his life. Mr. Siegel died in 1982, survived by his wife, Phyllis, and his two daughters, Susan and Linda.
Under the agreement, a trust was established for the life benefit of Phyllis. Upon her death, the remainder is distributable to Susan and Linda, in equal shares. If either daughter predeceases Phyllis, she is entitled to appoint her half of the remainder to anyone within a class which excludes only herself, her creditors, her estate or creditors of her estate. In default of exercise of the power of appointment, the share of a predeceased daughter would pass to her issue. Phyllis, Susan and Linda are the trustees of the trust.
The trust agreement limits investments to "interest bearing accounts or certificates of deposit in Bowery Savings Bank, Williamsburgh Savings Bank or other savings banks comparable thereto doing business in the City of New York.” Susan wishes to continue to invest as directed in the trust agreement whereas Linda wishes to expand the class of permissible investment to include obligations of the United States Treasury, insured municipal bond funds and blue chip stocks.
As a result of their differing views about trust investments, Linda and Susan, joined by Phyllis, ask the court to split the trust into two now rather than dividing the remainder upon trust termination.* In addition, they ask the court to construe the trust of which Linda is presumptive remainderman to broaden investment discretion as described above.
A trust may be split into multiple trusts if all persons interested in the trust consent to the split and the split is not directly contrary to the primary purpose of the trust (EPTL 7-1.13 [a] [2]). But for the request to expand the trustees’ investment authority, this division could be accomplished nonjudicially.
*700 The primary question presented by this application is whether the proposed expansion of investment discretion for one of the new trusts is permissible. In conjunction with that question, the court must consider the effect of such an expansion on the trustees of the other trust who propose to continue to follow investment restrictions as set forth in the governing instrument.
Where unanticipated circumstances cause compliance with the directives of a will or trust to defeat or substantially impair the accomplishment of the creator’s intent, relief may be available (2A Scott, Trusts § 167, at 275 [Fratcher 4th ed]). For example, a change in economic situation may warrant deviation from investment directives set forth in a trust instrument (see, e.g., Matter of Talman, 126 Misc 2d 860; Matter of Pace, 93 Misc 2d 969; Matter of Morgan, 13 Misc 2d 214; Matter of Flanagan, 199 Misc 842; but see, Matter of Albert, 111 Misc 2d 884). Such relief constitutes a grant of additional authority to the trustee by the court rather than a determination that such authority was conferred by the governing instrument (Scott, op. cit.).
In this case, the basis for allowing deviation is the inefficacy of the investment restrictions in the modern financial environment. The settlor executed the trust agreement when interest rates were unusually high which strongly suggests that the purpose of the restriction was to ensure a steady, low risk, favorable income stream for his wife. Current economic conditions are far different from the unusual conditions that prevailed in 1977. Bank account investments now yield radically lower returns.
Furthermore, investment theory has progressed and, following that, the law governing fiduciary investment standards. The prudent man standard (EPTL 11-2.2), in effect at the inception of the trust, categorized particular investments, such as certificates of deposit, as prudent. In contrast, the prudent investor standard (EPTL 11-2.3) now in effect judges prudence by reference to risk management and the underlying determination of the appropriate level of risk for a particular portfolio (see, 6 Rohan, NY Civ Prac ¶ 11-2.3 [1]).
The substantial change in economic conditions together with developments in investment theory and law governing fiduciary investment conduct strongly suggest that the settlor’s purpose of maximizing the trust’s income stream with minimum risk may be best achieved by relaxing the investment restrictions. Accordingly, it is appropriate to broaden the *701 investment discretion of the trustees who seek expanded authority thereby producing a more balanced fund for the settlor’s widow when both trusts are taken into account.
This result need not oblige the trustees of the other trust, who wish to be governed by the restrictions set forth in the instrument, to seek similar deviation authority. The relief granted here is not a declaration of the meaning of a provision of the instrument which necessarily would apply to any trust governed by that instrument. It is a grant of a supplemental authority which need not be forced upon trustees against their wishes, particularly where one trustee is the sole income beneficiary and the other is the presumptive remainderman who also holds the broadest possible nongeneral power of appointment (cf., SCPA 315 [2] [b]; 3 Scott, op. cit., § 216.2).
Based upon the foregoing, the trust is divided and the trustees of the trust of which Linda is the presumptive remainder-man are authorized to invest as requested.

 If the requested relief is granted, Susan would resign as trustee of the trust of which Linda was the presumptive remainderman, and Linda would resign as trustee of the trust of which Susan was the presumptive remainder-man. The right to resign is conferred by the trust agreement and judicial approval of this aspect of the plan is thus not required.