OPINION OF THE COURT
Anthony A. Scarpino, Jr., J.
This is a proceeding by JPMorgan Chase Bank, N.A. as trustee of the trust created under the will of Elmer Ellsworth Smathers (decedent) for construction and reformation of decedent’s will and for advice and direction regarding the sale of real property held by the trust. The parties have filed a stipulation wherein they identify the papers to be considered on this application.
Decedent died testate on January 11, 1928. Under his will dated December 11, 1926, decedent disposed of his residuary estate in trust. The trust term is measured by two lives, decedent’s niece-in-law, Virginia Smith Healey (who postdeceased decedent on June 22, 1945), and his grandnephew Elmer Ellsworth Smathers who is 92 years of age. During the trust term, the trustee is directed to pay from income $60,000 annually to Virginia Smith Healey or her issue. At present, there are three persons sharing such income one of whom, David Arthur Pollard (decedent’s great-grandnephew), is under a disability. The balance of the trust income is paid in specified units to numerous individuals and, upon the death of certain of such beneficiaries, to his or her surviving spouse or issue. There are approximately 100 income beneficiaries and nearly 200 contingent remainderpersons. James P Reduto, Esq., was appointed as guardian ad litem for David Pollard, and J. Henry Neale, Jr., Esq., was appointed to represent the infant remainderpersons.
Upon the death of the second measuring life, the trustees are directed to distribute the trust assets to decedent’s corporation, Elmer E. Smathers, Inc. Following such transfer, the stock of the corporation is to be distributed to the then living income beneficiaries in proportion to their respective interests in income.
The primary assets of the trust are two properties which decedent owned: 18 Broadway and 562 Fifth Avenue. The will was customized to provide for decedent’s explicit direction that the trustees retain both properties. Although he granted his fiduciaries a broad power to sell and convert trust assets, decedent expressly prohibited the sale of either property as follows:
*339 “forty-third: As a specific exception to the power to sell real property ... I direct that neither my Executors nor Trustees shall sell or dispose, unless required by law so to do, of the property known as No. 18 Broadway, New York, leased to the Standard Oil Company of New York, nor of the property known as the Fifth Avenue and 46th Street property. In the event that any sale of any property shall be necessary by law, I direct that the #18 Broadway property be the last to be sold or disposed of and that the said Fifth Avenue and 46th Street property be the next to the last to be sold or disposed of . . . . It is my intention that said two parcels of real estate shall remain permanent assets of the trust . . . and far as it may be legal so to do, direct that there shall be no power on the part of either the Executors or Trustees to sell or convert said two parcels of real estate.”
Under article fifty-third, decedent acknowledges that the properties will form a substantial portion of his estate and he expresses his belief that such assets are already “very favorably” invested. The disposition of the properties to the corporation was intended to avoid a premature sale of the properties in the event the trust terminated early. Should income be insufficient (an event decedent did not consider likely and which has not occurred), decedent expressed his wish under article fifty-seventh that the income beneficiaries not be allowed to change the character of the investments in order to produce additional income.
Both properties are subject to long term leases. In 1920, decedent entered into a 99-year lease (which expires in 2019) with Standard Oil Company of New York for the Broadway property at a fixed rental of $250,000 a year plus taxes, utilities, insurance and maintenance. The lease permitted Standard Oil to demolish, construct or erect a new building over the Broadway property provided that the Broadway property is “capable of being used and operated in every particular as an entirely separate building” (referred to by the parties as the separate structure clause). In 1977, the trustee entered into a lease of the Fifth Avenue property which terminates in 2011 subject to the tenant’s right to extend to 2026.
Between 1921 and 1926 Standard Oil constructed a building atop of and adjoining the Broadway property which constitutes *340 approximately 72% of the combined properties known as 26 Broadway. It is not known whether such construction violated the separate structure clause. Following an unopposed hearing held by the Landmark Preservation Commission, in September 1995, 26 Broadway was designated a landmark site. Petitioner suggests that such designation impacts whether the building is capable of being divided as contemplated by the lease, and the ultimate sale of the Broadway property.
The present application is precipitated by the sale of the adjoining property by Standard Oil to a real estate group know as the Chetrit Group, LLC. Chetrit paid $225,000,000 for the adjoining property. Initially, Chetrit offered to purchase the trust’s 28% interest in 26 Broadway for $11 million.[1] Petitioner obtained its own appraisal from Grubb & Ellis and negotiated to sell the Broadway property to Chetrit for $23,400,000 plus expenses related to the sale and this proceeding. The sales contract is conditioned upon petitioner obtaining authorization to sell.
Petitioner asks the court to reform decedent’s will in order that it may: (i) deviate from the express prohibition in the will to enable consummation of the sale to Chetrit, and (ii) create a limited liability company instead of a corporation for receipt of the trust assets. Additionally, petitioner seeks advice and direction pursuant to SCPA 2107 to permit it to sell the Fifth Avenue property.
The doctrine of equitable deviation has been applied by our courts to permit deviation from the terms of a will or trust where there have been unforeseen circumstances and adherence to the instrument threatens to defeat or substantially impair the purpose of the trust (Matter of O’Donnell, 221 NY 197 [1917]; Matter of Young, 178 Misc 378 [1942]; Matter of Pulitzer, 139 Misc 575 [1931], affd 237 App Div 808 [1932]; Matter of Siegel, 174 Misc 2d 698 [1997]). Application of the doctrine must accomplish the testator’s intent which is the paramount consideration (see Matter of Singer, NYLJ, Mar. 11, 1992, at 26, col 3; Matter of Skinner, NYLJ, Oct. 23, 2006, at 37, col 2; Matter of Rubin, 4 Misc 3d 634 [2004]). Thus, reformation or deviation will not apply where the testator’s or settlor’s intention is unambiguous (see Matter of Palmer, NYLJ, Aug. 7, 2002, at 20, *341 col 1; Matter of Pope, Bowes & Citibank, N.A., NYLJ, Jan. 16, 1996, at 27, col 1).
The court in Pulitzer (supra) posits several questions as a predicate to determining whether equitable deviation should apply: (i) does the fiduciary have the power to sell; (ii) where there is a prohibition, may the court utilize its equitable power to modify the terms of the trust; and (iii) do the proofs submitted justify the exercise of such power? In other words, where problems not foreseen jeopardize the trust, Pulitzer suggests that a court may éxercise its equitable power to permit deviation in order to protect the trust. Examples are found where under the administrative powers the fiduciary was restricted to certain investments which limitation later adversely affected the purpose of the trust (see Matter of Pulitzer, supra; Matter of Young, supra; Matter of Siegel, supra; Matter of Flesch, NYU, Apr. 19, 2004, at 31, col 4).
Petitioner asserts that the longevity of the second measuring life, the possible lack of severability of the building and the ability to consummate a sale with the present owner of the adjoining properties are unforeseen circumstances that warrant the application of the doctrine. The trustee further suggests that the current favorable capital gains tax rate make this an opportune time to sell. Both guardians ad litem agree and recommend that the relief be granted. The guardians also consider the likelihood that the trust will realize greater income upon the investment of the sales proceeds as a factor warranting the relief. In that regard, in the event the relief is granted, Mr. Reduto, on behalf of his ward, requests a further reformation to provide that his ward would share in the increased income in proportion to his current interest. At present, David Pollard’s share is a fixed amount.
Essentially, petitioner and the guardians ad litem recommend deviation as being in the best interests of the trust beneficiaries. Not all of the beneficiaries agree.[2]
Several beneficiaries have filed opposition to the relief, with the exception that all parties who have appeared consent to the creation of a limited liability company as the receptacle for the assets upon the termination of the trust.
*342 Objectants maintain that petitioner has failed to demonstrate any unforeseen circumstances, and that the proposed reformation is a marked departure from decedent’s will. With regard to the merits of the proposed sale, objectants have provided an appraisal of the Broadway property from Massey Knakal Realty Services in the amount of $78,083,071 or some $55 million more than the contract price.
Decedent’s intent is unequivocal: “[the] two parcels of real estate shall remain permanent assets of the trust . . . .” If required by law to sell trust assets then the trustee must sell all other assets before resorting to a sale of the Broadway property. Petitioner does not allege that the trustee is required by law to sell any assets. As the courts in Matter of Palmer (supra) and Matter of Pope, Bowes & Citibank, N.A. (supra) hold, deviation should not apply where the testator’s intent is unambiguous.
Moreover, the change in circumstances here cannot be characterized as unforeseen by decedent. It is more likely that decedent knew of or anticipated some of these circumstances. The long term lease was signed and the construction of the adjoining property substantially completed before decedent executed his will. Notwithstanding such facts, decedent expressed his belief that the trust income was sufficient to satisfy the terms of the trust. It appears that the income has been sufficient for some 80 years. Thus, there is no frustration of purpose.
Moreover, in the instant case, there has been no measurable change in the administration of the trust. The sale of the adjoining property has not affected the income available for distribution among the beneficiaries. Such sale and subsequent offer to buy the Broadway property is simply an opportunity which petitioner believes to be in the best interests of the trust. The test however is not “best interests”; rather, petitioner must establish that decedent’s presumed intent is incapable of fulfillment.[3] Petitioner has not met its burden. Accordingly, petitioner’s request to reform the will to permit it to sell the Broadway property is denied. Based upon this determination, the court need not reach any issue concerning the particulars of the proposed contract.
*343 Equally unavailing is petitioner’s request for advice and direction as to whether it should market and sell the Fifth Avenue property.
SCPA 2107 provides that a fiduciary may seek advice and direction when faced with uncertainty over the propriety of selling estate property or under extraordinary circumstances such as handling of complex valuation issues, tax elections or where a conflict exists. Absent extraordinary circumstances, the court will not intervene to substitute its judgment for the business judgment of a fiduciary (Matter of Tannenbaum, 20 AD2d 808 [1964], affd 15 NY2d 829 [1965]; Matter of Lovell, 23 AD3d 386 [2005]; Flaum v Birnbaum, 168 AD2d 933 [1990]; Matter of Osterndorf, 75 Misc 2d 730 [1973]).
In support of its request, petitioner relies upon the unforeseen circumstances alleged in support of the request to sell the Broadway property. The trustee seeks permission to sell the Fifth Avenue property and for the court to provide guidelines for such sale. Decedent’s will clearly restricts the sale of the Fifth Avenue property. As with the Broadway property, no unforeseen factors have been presented which warrant departure from the terms of the will. Accordingly, the court declines to advise and direct.
We turn now to the request to reform decedent’s will to authorize the trustee to transfer the trust assets to a limited liability company (LLC). All of the parties consent to such reformation. Here, petitioner is on stronger ground.
The general rule is that our courts will rarely reform a will to correct a mistake (see Matter of Snide, 52 NY2d 193 [1981]). However, an exception is made where the requested reformation seeks to cure a tax defect provided that such reformation conforms with decedent’s intent (see Matter of Martin, 146 Misc 2d 144 [1989]; Matter of Choate, 141 Misc 2d 489 [1988]; Matter of Mainzer, 151 Misc 2d 203 [1991]; Matter of Gottfried, NYLJ, Apr. 11, 1997, at 25, col 6; Matter of Shapiro, 10 Misc 3d 1071[A], 2006 NY Slip Op 50044[U] [2006]).
During his lifetime decedent created the corporation. As noted, upon termination of the trust, the corporation is to receive the trust assets including the two properties. Petitioner seeks authority to form a limited liability company to be called Elmer E. Smathers, LLC and for reformation of the will to substitute the Smathers LLC for the corporation. The objective is to avoid a double income taxation by the corporation (e.g., where a tax is imposed upon the corporation and again upon *344 the shareholders when distributions are made to them). While election as a subchapter S corporation may avoid double taxation, such entity is limited to 100 shareholders. In view of the current number of beneficiaries, it is highly unlikely that the corporation would qualify for subchapter S status.
In 1986 section 311 (b) of the United States Internal Revenue Code (26 USC) was repealed resulting in the present rule that a corporation must recognize gain on both nonliquidating and liquidating distributions of appreciated property to a shareholder. Eight years later, in 1994, New York enacted the Limited Liability Company Law which authorizes an LLC to be treated as a partnership for tax purposes. Partnership classification may be elected by checking the appropriate box on the federal tax form. The LLC may combine the corporate limitation on personal liability of the owners (called members) with the favorable pass-through tax treatment (see Rich, Practice Commentaries, McKinney’s Cons Laws of NY, Book 32A, Limited Liability Company Law, 2007 Pamph, at 2).
Here, the proposed reformation will effectuate decedent’s plan for the transfer of the trust assets to an entity whose members will consist of the income beneficiaries living at the termination of the trust. In addition, such reformation will eliminate the double taxation of the assets, a result decedent presumably intended. The court is satisfied that the proposed reformation is consistent with decedent’s intent.
The Smathers LLC to be established must however parallel the corporate structure with respect to its management and control and the respective interests of the beneficiaries as its members. Accordingly, petitioner shall first provide the court and parties with a proposal for the formation of the Smathers LLC prior to this court granting authority to create the entity.
Based upon the foregoing, decedent’s will is reformed to substitute an LLC, to be formed by the trustee in accordance with the foregoing, for the corporation.

. It is noted that the parties do not concede the percentage interest attributed to the Broadway and adjoining properties. Such dispute is not however relevant to this determination.

. Several beneficiaries appeared in person on various return dates, most of whom did not file a notice of appearance. Objectants filed a package containing “proxies” and affidavits in opposition from some 36 beneficiaries who support their position.

. Were the standard “best interests,” then an issue as to whether the proposed sale is for the best price would require resolution. It is conceded that the Broadway property has not been marketed for sale.