S. Samuel Di Falco, S.
Two of the petitioners, in this application to withdraw funds which were deposited with the Director of Finance of the City of Hew York, are the persons in whose names the deposit was originally made. There appears to be no dispute as to their identity. The third person has died. Three of the petitioners claim to be entitled to his property at his domicile, and the court is satisfied that the sum on deposit is payable to them.
All of the petitioners reside in Bulgaria. The petition, which is made in the names of petitioners by their attorneys in fact, alleges that the petitioners will have the benefit, use and control of the funds, and it requests payment of such funds to the attorneys in fact in Hew York. In directing payment of legacies or estate shares, the court will, direct payment to the beneficiaries. The estate representative or person holding the funds may ordinarily execute a decree by making payment to anyone authorized to give him an effective discharge and release. He does so on his responsibility. A decree, determines finally the rights and interests of the parties in and to estate assets (Surrogate’s Ct. Act, § 78), while, powers of attorney are generally subject to revocation at will and at any moment. The decree, will not attempt to make a final and binding determination of the rights and. interests of agents of parties whose authority is subject to recall, even before the decree can be executed.
The question, then is whether persona resident in Bulgaria will have, the “ benefit or use or control of the money ” transmitted to them in Bulgaria (Surrogate’s Ct. Act, § 269-a). The evidence satisfies the court that the beneficiaries will have such benefit, use and control.,
The. prohibition against transmission of United States Treasury cheeks, that was imposed under Treasury Circular Ho. 655> *235 was removed by the United States on August 1,1963. Treasury checks are now transmitted to Bulgarian recipients through the United States Legation at Sofia. The official rate of exchange established by Bulgaria is two leva for one dollar. It is argued that this is an arbitrary rate of exchange established internally by the fiscal authorities of Bulgaria, that it bears no relation to the actual value of the leva in open market operations, and that it denies full benefit and use to the legatees because it fails to give them full value. Yet the evidence in support of this argument is that on an open market, the rate would be 2 leva and 75 stotinki and in the “ black market” it is 2.75 leva to the dollar. There is thus not such a disparity between the so-called open market rate and official rate as to amount to confiscation (cf. Matter of Greenberg, N. Y. L. J., June 16, 1964, p. 14, col. 3, affd. 24 A D 2d 435).
It appears without dispute that a Bulgarian resident who receives an inheritance from New York may receive the full amount transmitted and may elect to have it paid to him in leva at the official rate of exchange or kept in dollars, in the exact amount transmitted, in an account with credits for use in a Bulgarian State enterprise called Corecom. That institution was created to provide goods and services to holders of foreign currency at rates more favorable than the regular rates of exchange. Corecom will issue either bonds in dollar denominations or a letter of credit. The bonds may be sold to another Bulgarian citizen, may be given away or may be transmitted by will. There is no limit of time or amount in the use of Corecom credits.
The evidence shows that the dollar prices charged at Corecom are such that a purchaser receives the equivalent of anywhere from 2% to 5 levas to the dollar, as contrasted with the official rate of 2 to 1 or the so-called black market rate of 2.75 to 1. A wide variety of goods and services are available at Corecom. If one wishes to purchase merchandise not then on hand, it can be obtained by special order through Corecom. The merchandise purchased at Corecom can be resold to another person, provided that the seller is not engaged in that practice as a business or profession.
No taxes or other charges are imposed by the Bulgarian government on inheritances received from outside the country. There is no difference in the use of funds between moneys inherited and money earned. The owner may freely dispose of all funds. A Bulgarian citizen may take his entire inheritance in Corecom credits, and he may thereafter use it, assign it or convert it to leva. An earlier limitation on the percentage that *236 could be used in Coreeom has been removed. The entire inheritance may now be so used.
The United States Department of State has confirmed to the court certain of the evidence that was presented at the hearing. It confirmed the Agreement of July 2, 1963, the removal of restrictions by the Treasury Department, and an exchange of letters in which the Bulgarian government gave assurances that it placed no obstacles or limitations preventing beneficiaries from receiving United States checks “ and from converting them to the most favorable prevailing rate for remittance to private persons, at present two levas to the dollar.” The State Department letter added: “ According to information received by the Department, this is a reasonably favorable rate.” The Department of State received information from the American Legation in Sofia that in January, 1965 the Bulgarian government had enacted legislation which exempted from taxation inheritances received by Bulgarian nationals from abroad.
It is not disputed that a Bulgarian citizen would not have as free and unlimited a use of the money as would an American citizen. A Bulgarian may not, without a license from the Ministry of Finance, transfer his money outside Bulgaria or dispose of it in any way to a person outside the country. He may not, without such a license, leave his money on deposit in New York or invest it outside his country. He may not renounce his interest in an estate here nor may he assign it to a nonresident of Bulgaria. These financial restrictions apply to all citizens of Bulgaria and to all of their assets, whether earned in Bulgaria, inherited there or inherited from abroad. Many countries place restrictions upon the transfer of currency abroad, and of course any restriction at all upon the flow of funds does to that extent limit their use. Such financial restrictions, however, are not within the aim and purpose of section 269-a of the Surrogate’s Court Act. That section is intended to safeguard an inheritance by withholding it temporarily when payment would result in confiscation, in whole or in part, until the time arrives when the beneficiary might use and enjoy it for himself. (Matter of Braier, 305 N. Y. 148, 154; Matter of Bold, 173 Misc. 545, 547; Matter of Weidberg, 172 Misc. 524, 527; Matter of Wells, 204 Misc. 975, 978-979.) The fact that he, together with all other citizens, cannot make investments abroad does not result in such a limitation upon enjoyment as to amount to confiscation, in whole or in part.
There is evidence in the record that the leva has been devalued approximately 10 times in the past 20 years, the last being in 1961. The devaluation is defined as “ the reduction of the gold *237 content of a currency.” There is no evidence that there were any discriminating practices in the revaluation, such as appeared in Matter of Wells (supra). The argument appears to be that there is danger of further devaluation or revaluation of the leva that will result in loss to the beneficiaries. This, of course, is speculative. However, it has been established that a beneficiary may leave his inheritance in dollars in Corecom credits, and that these Corecom bonds or credits can be converted to levas in the future or can be retained in the dollar accounts. Having in mind the amounts here involved and the opportunities available to the beneficiaries, the evidence indicates that they will have the benefit, use, enjoyment and control of the moneys. The decree will authorize payment to them.
Section 231-c of the Surrogate’s Court Act authorizes the court to determine the reasonable compensation of the attorneys in fact. The court will do so upon settlement of the decree.