S. Samuel Di Falco, S.
This is an application by beneficiaries whose shares were deposited in court under section 269-a of the Surrogate’s Court Act, to withdraw the respective sums on deposit and to have them transmitted through the purchase of certificates or credits of Tuzex Foreign Trade Organization in Prague, Czechoslovakia. This application and 10 similar applications were presented to the court upon a single record. The respondents are the Public Administrator, the fiduciaries in certain pending administrations and, in one case, the Attorney-General of the State of New York. The question in each case is whether the respective beneficiaries will have the benefit, use and control of funds transmitted to them in the form of Tuzex certificates.
In Matter of Reidl (23 A D 2d 171), the Appellate Division considered an application by beneficiaries for the transmission of funds to them through the program of the Tuzex Foreign Trade Organization. Reversing the Surrogate, the Appellate Division held (p. 172) “ that the proof shows that this program provides a reasonable assurance that legacies to Czechoslovak residents will reach the beneficiaries. It was further established that the United States Government has placed no restrictions on the purchase of such certificates for use of estate legatees in Czechoslovakia ”. The Appellate Division also said: “ When the Surrogate should use his discretion to apply the section [269-a] depends on the proof before him.”
Tuzex Foreign Trade Organization is a foreign trade enterprise established by the Government of Czechoslovakia for the retail sale of goods for foreign currencies. The lawful currency in Czechoslovakia is the Czechoslovak crown, which is an internal, nonconvertible currency. The corporation which that government has set up for the sale of goods for foreign currencies is somewhat similar to those established in other countries which *496 have a similar economic system. This court has heretofore considered the Bulgarian State enterprise known as Corecom (Matter of Petroff, 49 Misc 2d 233). The basic objectives of both enterprises are similar but that referred to in the cited case had many differences from the one in the present case and had some greater advantages to the beneficiaries. However, in both cases it appears that the purpose is to obtain foreign currency and in pursuit of that ¡objective nationals with foreign currency are given opportunities to purchase scarce goods or goods not available generally, at prices that are attractive.
In the pending cases, it has been established that a beneficiary of an estate being administered in the United States may use the entire amount of his distributive share for the purchase of Tuzex certificates or Tuzex accounts, without any limitation as to amount, and that he may withdraw any sums without limitation of amount. It appears that in the past there was a percentage limitation on the amount that could be converted into this form of credit, and, in addition to the percentage limitation there was an absolute ceiling. Moreover, not more than 5,000 Tuzex crowns could be used in any one year. That limitation would amount to approximately $800. It is conceded that all of these limitations have been removed insofar as United States estates are concerned. There are no taxes or duties levied on Tuzex certificates.
Several catalogues which describe goods and prices have been introduced in evidence. The prices are generally reasonable for the goods so listed. It may be that some prices are higher than current prices in this country for similar articles but others are lower than prices here. The difference in prices may reflect scarcities or transportation costs. The testimony was that the prices generally on articles in the Tuzex stores are 2% or 3 times less than similar articles would command on the regular markets.
Tuzex certificates have a time limit which is printed on the face of each certificate. The time limit is usually six months. However, it appears that the time for use of the credit can be extended by an exchange for new certificates or by deposit in a Tuzex account from which later certificates can be withdrawn. Obviously time limitations on the use of the certificates — and indeed the entire program — will depend upon the consent of the government, but there is no basis in the present record for finding that existing practices will not continue.
Unlike the certificates in Matter of Petroff (49 Misc 2d 233, supra), the holder of Tuzex certificates cannot sell a certificate or his interest in a Tuzex account. The certificates can be used only for the purchase of merchandise in Tuzex stores. One who *497 purchases merchandise may sell it to another, provided that he is not engaged in the conduct of business without a license. Presumably this means that he might sell articles sporadically, but could not engage in that practice with any regularity. Again, unlike Matter of Petroff {supra), the accounts in Tuzex are not maintained in American dollars and purchases are not made in dollars, although the dollar equivalents are shown in the catalogues. The national holds what has been characterized in the record as Tuzex crowns. One of the catalogues states: ‘ ‘ Prices are quoted in Czechoslovak crowns and American dollars at the rate of exchange valid on the day of the publication of the price list and are understood to apply to the purchases of goods in the Tuzex sales rooms. Goods are sold for foreign currencies enumerated in the list of quotations for purchasing foreign currencies of the * * * (State Bank of Czechoslovakia). Conversion is made at the rate of exchange valid on the day of payment. Changes in prices are reserved.” The prices given in crowns patently mean only Tuzex crowns because the merchandise cannot be purchased by general public with the internal currency.
The rate of exchange is controlled by the government. It appears that at present the rate of exchange is 7.17 to 7.18 Czechoslovak crowns to the dollar. A beneficiary entitled to a legacy or share in dollars may elect to convert it to Czechoslovak crowns or into Tuzex crowns. If he converts into Tuzex certificates’ he receives crowns at the official rate of exchange. If he elects to convert into Czechoslovak crowns he will receive a 100% bonus, that is, 14.34 crowns instead of 7.17. There is no legal open market for the purchase of Czechoslovak crowns. Purchase of dollars in limited amounts may be made in Czechoslovakia by persons who are authorized to travel to the United States. Other purchases of crowns would have to be made on the so-called “black market,” if one exists. There was testimony that in the conversion of dollars and crowns in the very limited amounts that can be purchased from official agencies for travel abroad or that may be procured from sources not lawfully authorized, the rate of exchange would vary from 35 to 37 crowns to the dollar. There is thus a disparity between what could be received from the State bank (approximately 14.35 crowns) what might be received in the so-called illegal markets (approximately 36 crowns) and what would be received in the conversion to Tuzex crowns (approximately 7.17 or 7.18). The lower rate on the Tuzex crowns is said to be offset by the low prices in the Tuzex stores and to make them more attractive than the regular crowns even with the 100% bonus.
*498 One who elects to take the sum. transmitted to him in Tuzex crowns may thereafter convert them into regular crowns, but one who accepts regular crowns cannot afterwards convert them to Tuzex certificates. There is a large variety of merchandise in the Tuzex stores, many of which are imported and some of which are made in Czechoslovakia for export. Some of these items are not available in general markets and some, only after a long period of waiting. Only limited types of food may be purchased in the Tuzex stores, generally canned or preserved food or fresh fruits. Fresh meat or fresh vegetables .cannot be purchased there. One cannot purchase a house with Tuzex certificates nor use them to pay rent or to pay debts. He cannot use it for any purpose except for purchase of merchandise available at Tuzex .stores. Tuzex certificates may be given away, but they cannot be sold. Upon the death of the owner, the Tuzex certificates or accounts become assets of his estate. There is no fixed limit on the amount that can be so transmitted or given away.
There has been testimony of the large number of purchases, that have been made at the Tuzex stores. The court has examined the catalogues and the prices of goods as expressed in the dollar equivalent shown in the catalogues. It would appear that persons using the facilities of these stores can obtain essential articles and also luxury items at prices that are generally reasonable.
In a case such as this, a full view of the situation is not obtained merely by comparing the official conversion rate with what one might be able to obtain in a free and open market. It seemed to the court that this issue was not one that need be explored in detail in this case. If the beneficiary were obliged to convert dollars into the regular internal currency, then such inquiry would be very pertinent (Matter of Greenberg, 24 A D 2d 435). Here, however, he wishes to convert into a form of currency usable only in Tuzex stores. It seems to the court that in such case, the court must give prime consideration to the type of merchandise available to the beneficiary and to the prices charged in terms of the dollars which he has here. Clothing, electrical equipment, motor vehicles, food, and many other items are sold at prices that must be said to be reasonable and to provide the purchaser with a fair return for his money.
On the basis of the decision in Matter of Reidl (23 A D 2d 171, supra), and on all of the evidence here, the court is of the opinion that the petitioners would have the benefit, use and control of the funds within the meaning of section 269-a of the Surrogate’s *499 Court Act, and the application to withdraw the funds and to transmit them to the beneficiaries in the form of Tuzex credits will be granted.