Chief Judge Fuld.
Osvald Kosek was a Czechoslovakian refugee who, after his property -had been confiscated by the Czechoslovakian communist government, had come to this country some time prior to 1957. He died in 1960, leaving a will in which he bequeathed his estate — having a value of about $50,000 — in trust for the benefit of his niece, Milena Petrof-ova, and her son, his grandnephew, Ivan Petrof. The will directed the trustee to “ apply ” the income “ together with so much of the principal thereof as he, in his sole and unlimited discretion may determine, for the support, maintenance and comfort ” of the two beneficiaries, “ all this [being] subject to the provisions hereinafter set forth ’ \ The testator also provided that whatever remained of the principal after the death of the life beneficiaries was to go to -such persons as the survivor should validly appoint; in default of appointment, such remainder was to be paid to the issue, of the grandnephew and, in the event “ there [were] no such issue,” to charities designated by the trustee.
The will contained an express provision for the termination of the trust; because of his experience .with the communist-controlled Czechoslovakian government when his property was taken from him, the testator made such termination contingent upon the happening of one or the other of two specified conditions. The trust was to come to an end, paragraph Fifth of the will provided, and the principal was to be paid to the two beneficiaries “ [i]n the event * * * that either or both of [them] shall establish to the satisfaction of my Trustee, or if said Trustee were not satisfied, to the satisfaction of the Court ’ ’ that they reside “in a country which is not dominated by a communist government” or that they “ arrived in a country from which he, she or they shall be able to make satisfactory arrangements permitting him, her or them to fully and freely enjoy the benefits of such property ”.
In addition, paragraph Eighth authorized the executor or trustee to ‘ ‘ withhold the actual payment of all or any part of the income and/or property ’ ’ of the trust if it appeared that the beneficiaries would not have — and the language was that contained in section 269 of the Surrogate’s Court Act (now *481 SCPA 2218)[1] — “ the benefit, use or control” of such income or property. “However,” the will went on to recite, “no payment or other transfer of property shall be withheld by the Executor and/or Trustee in the event that it is decided by a Court having jurisdiction that such payment or part payment or transfer of property can be safely made.”
In 1966, pleading ill health, crowded living conditions and other circumstances, the beneficiaries petitioned the Surrogate, in effect, for termination of the trust and payment .over to them of $40,000 — an amount which they estimated would not be “ required to meet any foreseeable obligation of the estate ” — declaring that they wished to receive ‘ ‘ as much of the net assets of the estate as are available for distribution through the medium of Tuzex certificates ”.[2] They asserted that by such payment they would “ receive the use, benefit and control of their legacies ’ ’ within the sense of the statute and would be able ‘[1] to fully and freely enjoy the benefits of such property ” within the meaning of paragraph Fifth of the will.
*482 In his answer, the respondent, the successor to the original executor and trustee, averred that neither alternative condition for termination of the trust had been met and that, since the trust “has not terminated,” the petition should be dismissed. According to the respondent, he planned to send each of them the sum of about $42 a month, the amount which approximated “ the average monthly income [of an individual] in Czechoslovakia. ’ ’
New York County Surrogate Di Falco decided in favor of the petitioners, finding “that the conditions imposed in the language of gift [for the termination of the trust under par. Fifth] have been met ”. However, instead of directing immediate payment of the entire principal to the beneficiaries, he authorized “a preliminary payment of $5,000 * * * at this time * * * without prejudice to a renewal of the application when the situation demands.” Upon a motion by respondent trustee for reargument — which was granted — both sides submitted affidavits on the question whether the petitioners would have the benefit of the trust property in Czechoslovakia. In addition, the petitioners submitted (1) an affidavit by an expert in Czechoslovakian law, to the effect that the rights of that country’s nationals to property received by inheritance had in no case been “ challenged or limited or impaired ” in Czechoslovakian law or practice; (2) circulars showing what could be bought with Tuzex certificates, including “private homes”; and (3) their own letters demonstrating their need of money and the uses to which it would immediately be put.
Following reargument, the Surrogate adhered to his original determination. After declaring that the term, “ full and free enjoyment of the fund”, was the equivalent of “use, benefit and control ’ ’, the court went on to say that the will ‘ ‘ evidence [d] an intent on the [testator’s] part * * * that these legatees enjoy the use of this legacy, principal as well as income, at such time as this court deems that payment or part payment * can safely be made. ” ’[3]
*483 Upon appeal, the Appellate Division struck out all of the ordering paragraphs of the decree, except those dealing with attorneys’ fees, and dismissed the petition; thus, although it was in terms a modification, the order was, in effect, a reversal. The court held that neither of the “ two contingencies ” provided in paragraph Fifth for termination of the trust had occurred and that neither petitioner had met the burden which rests upon an alien beneficiary of proving that he ‘ ‘ will receive the benefit of the money or property due him ”.
We cannot agree. It is our view, as it was the Surrogate’s, that the second of the alternative conditions specified in the will for termination of the trust (par. Fifth) has been met and that the trust has terminated. The Surrogate could, therefore, have directed immediate payment of the entire trust principal to the petitioning beneficiaries. However, he chose, in his discretion, not to do so; instead, he decided, as he was privileged to do, to direct payment of only a part of the principal, and the petitioners, satisfied with that disposition, have acquiesced in his decision.
To determine the meaning of a particular testamentary provision, it is necessary to look, first, to the testator’s intention. This, we have said, is to be “ gleaned not from a single word or phrase but from a sympathetic reading of the will as an entirety and in view of all the facts and circumstances under which the provisions of the will were framed.” (Matter of Fabbri, 2 N Y 2d 236, 240; see, also, Matter of Flyer, 23 N Y 2d 579, 584; Matter of Thall, 18 N Y 2d 186, 192.) Although the will before us is somewhat confusingly drafted, the testator’s design is clear. His language left no doubt that his niece and her son were the sole beneficiaries of his bounty, the sole objects of his concern. He desired them to have the immediate benefit of his entire estate, if possible, and, if anything remained at their death, he provided that it was to go absolutely to their appointees or, in default of appointment, to the grandnephew’s issue. The limitations upon the transfer of his estate to Ms *484 niece and grandnephew — stemming from his fear that his property might fall into the hands of the communist government — must be read in the light of this main purpose.
He proposed in paragraph Fifth to bequeath his estate outright to the petitioners if either of two conditions were fulfilled, and he was content to leave the question of fulfillment to the ultimate decision not of the trustee but of the court. That paragraph provides that the trust shall terminate if the beneficiaries either do not reside in a communist-dominated country or they have “ arrived in a country ” in which they may “ fully and freely enjoy” the benefits of the testator’s property. Concededly, the first condition was not met; the beneficiaries still reside in Czechoslovakia, a communist country. And, urges the respondent executor-trustee, neither was the second; since they never left their homeland, the petitioners may not be said to have “ arrived ” in a “ full and free ” enjoyment country even if Czechoslovakia had become such. In addition, the respondent maintains that the “full and free enjoyment” contemplated by the testator imposed a more stringent requirement for the transfer of the trust principal than the statutory requisite of “ benefit, use or control ” of legacies by Czechoslovak nationals (Surrogate’s Ct. Act, § 269; now SCPA 2218) and that whether the petitioners would have full and free enjoyment of the testator’s estate in Czechoslovakia cannot be decided without a hearing.
The respondent’s argument with respect to the word “ arrived” is not persuasive. The meaning of a single word may be gathered only from seeing or reading it in the context of the will as a whole and, of course, in light of the testator’s intent. (See, e.g., Spencer v. Childs, 1 N Y 2d 103, 106; Towne v. Eisner, 245 U. S. 418, 425; Central Hanover Bank & Trust Co. v. Commissioner, 159 F. 2d 167, 169; Cabell v. Markham, 148 F. 2d 737, 739.) Particularly pertinent is the court’s statement in the Spencer case (1 N Y 2d, at pp. 106-107):
“ Cases such as the present * * * well illustrate the aptness of Judge Learned Hand’s wise and trenchant observation that courts should be wary of making ‘ a fortress out of the dictionary ’, since there ‘ is no more likely way to misapprehend the meaning of language *485 * * * than to read the words literally, forgetting the object which the document as a whole ’ seeks to achieve. (Cabell v. Markham, 148 F. 2d 737, 739; Central Hanover Bank & Trust Co. v. Commissioner, 159 F. 2d 167, 169.) ‘ A word * * * may vary greatly in color and content ’ according to the intent of its author and the circumstances under which it is used.”
It is true that, taking the word, “ arrived,” literally, the petitioners may not be said to have “ arrived ” in a “ full and free enjoyment ” country unless they had come to it from another land. However, it seems obvious that the way in which the petitioners came to be in an acceptable country was manifestly unimportant to the testator. In view of his plain intent that his beneficiaries receive his entire estate, if possible, it was only necessary that they reside in such a country. Whether they happened to be in Czechoslovakia or not, they would fulfill the second alternative condition for termination of the trust, as long as they lived where they might “ fully and freely enjoy ” the trust principal. To read the testator’s will as requiring more than this would most certainly do violence to the document as a whole.
Nor do we find merit in the respondent’s further semantic argument that “ full and free enjoyment” (par. Fifth of will) means something other, and more strict, than “ benefit, use or control ” (par. Eighth of will). In our judgment, and it is confirmed by analysis of the pertinent paragraphs, those terms, as used by the testator, are synonymous. As the Surrogate observed, “a reading of the entire will” makes it clear that, “ when the testator was talking about full and free enjoyment of the fund he meant use, benefit and control”. We would merely add that, if a person has the “ benefit, use and control” of property, he generally has its “ enjoyment,” and the content of the latter concept is not enlarged by addition of the adjectives “ full and free.”
Likewise without substance is the respondent’s related contention that, in any event, the petitioners failed to establish that they would, in fact, have such benefit, use or control of the property in Czechoslovakia. On the contrary, the record fully supports the Surrogate’s conclusion that payment to the *486 petitioners “ can be safely made” and that they would fully and freely enjoy the benefits of the testator’s bequest. Thus, the documents presented by the petitioners (supra, p. 482) —the affidavit of the expert on Czechoslovakian law, the circulars showing the articles available for. purchase with Tuzex certificates and the letters written by the petitioners to their American attorneys —demonstrate that they will have the benefit of these funds. (See, e.g., Matter of Saniuk, 15 N Y 2d 482, denying mot. for lv. to app. 21 A D 2d 922; Matter of Braier, 305 N. Y. 148, 157; see, also, Matter of Danilchenko, 30 N Y 2d 504.) Beyond that, there have been a number of cases — including those cited by the Surrogate (Matter of Reidl, 23 A D 2d 171, 172, supra; Matter of Lehman, 72 Misc 2d 495) —in which proof of Czechoslovakian law and practice has been adduced, establishing that nationals of that country will receive and have the benefit of property willed them by American testators. (See, e.g., Matter of Paroth, 72 Misc 2d 499; Matter of Matous, 53 Misc 2d 255, 258; Matter of Karman, 51 Misc 2d 707, 708-709.)
In sum, a sympathetic reading of the will as an entirety leaves no doubt that the testator intended that his niece and nephew should enjoy the use of his property, principal as well as income, at such time as the Surrogate’s Court is satisfied that a payment or transfer can safely be made. Its conclusion that a payment of principal in the sum of $5,000 to each beneficiary ‘ ‘ can safely be made * * * at this time ” is amply supported by the record.
The order appealed from should be reversed and the decree of the Surrogate, insofar as it was reversed by the Appellate Division, should be reinstated, with costs payable out of the estate to all parties appearing and filing briefs.
Judges Burke, Jasen, G-abrielli, Jones and Wachtler concur ; Judge Breitel taking no part.
Order reversed and the decree of the Surrogate’s Court, insofar as it was reversed by the Appellate Division, reinstated, with costs to all parties appearing separately and filing separate briefs.

. SCPA 2218, the successor statute of section 269 (later § 269-a) of the Surrogate’s Court Act, is the one here applicable (SCPA 2802). Entitled, " Deposit in court for benefit of legatee, distributee or beneficiary ”, it was obviously aimed at protecting the property of legatees in communist-controlled countries; thus, subdivision 2 reads {is follows:
“ Where it shall appear that a beneficiary would not have the benefit or use or control of the money or other property due him or where other special circumstances make it desirable that such payment should be withheld the decree may direct that such money dr property be paid into court for the benefit of the beneficiary or the person dr persons who may thereafter appear entitled thereto. The money or property so paid into court shall be paid out only upon order of the court or pursuant to the order or judgment of a court of competent jurisdiction.”
And subdivision 3 of SCPA 2218 recites that, “where it is uncertain that an alien beneficiary * * * would have the benefit or use or control of the
money or property due him the burden of proving ” that fact “ shall be upon him or the person claiming from, through or under him.”

. Tuzex certificates are a kind of trading certificate issued by the Tuzex Foreign Trade Organization in Czechoslovakia under a program which has been held to provide “ a reasonable assurance that legacies to Czechoslovak residents will reach the beneficiaries." (Matter of Reidl, 23 A D 2d 171, 172.) After purchasing Tuzex certificates with the proceeds of their legacy — once the court directed payment — beneficiaries would be able to exchange them for the goods and items they needed.

. The decree, after noting the Surrogate’s “ decision • * • that the conditions imposed by the deceased * * * have been met and that the trust has terminated”, went on to adjudge that “the condition on the gifts to [the legatees] set forth in Paragraph ‘Fifth’ * ” * has occurred, to wit, it satisfactorily appears that conditions are such in Czechoslovakia, the country wherein said petitioners are domiciled and reside, that they will fully and freely *483 enjoy the benefits of their legacies, and that as a result, the trust established by Paragraph ‘ Fifth ’ of the Will has terminated ”. The decree further ordered that, upon exh-mition of the “amount [of $5,000] authorized,” the court “may authorize furtnex- ‘r .-missions in the same manner by supplemental order ”.