OPINION OF THE COURT
Renee R. Roth, S.
The executors and trustees of the estate of Arthur O. Choate, Jr., seek construction and reformation of testator’s will (SCPA 1420 [1]).
*490 This petition is the first of its kind under the new generation-skipping transfer tax (GST) of the Tax Reform Act of 1986, which retroactively repealed the former Act of 1976.
Under the new Act, a tax is imposed on three types of generation-skipping transfers: taxable terminations, taxable distributions and direct skips. A direct skip is any transfer to a person two or more generations below the transferor, which is subject to gift or estate tax, e.g., a bequest to a trust for grandchildren. A taxable termination occurs upon the termination of an interest in a trust where no successor beneficiaries are nonskip persons, e.g., upon the death of a child under a trust established for his life income benefit with remainder to grandchildren.
The most important tax expansion by the new law was to apply the GST to "direct skips” (26 USC § 2612 [c] [1]). Under both the old and new law, a transfer from a grandparent to a trust for a child and then to a grandchild is a taxable transfer. But under the old law, a transfer from the grandparent to a trust for the grandchild was a direct skip and not taxable. The new law makes all such direct skips taxable, whether the transfer is outright or in trust, except for direct skips to a grandchild whose parent predeceased (26 USC § 2612 [c] [2]).
Mr. Choate’s will contains a direct skip to a trust for his grandchildren, which was not subject to the old GST when the will was executed. Mr. Choate’s grandchildren are therefore adversely affected by the change in the law.
However, under the new law there is a $1 million exemption (the GST exemption [26 USC § 2631]), which was not available under the old law. The GST exemption, which may be applied in part to several dispositions or in whole to a single disposition, including a direct skip to grandchildren, must be allocated no later than the time for filing the transferor’s Federal estate tax return.
Mr. Choate’s will establishes a qualified terminable interest property (QTIP) trust of his residuary estate (valued at $7.5 million) for the benefit of his widow. As a general rule for generation-skipping tax purposes, the spouse who is the beneficiary of a QTIP trust is treated as the transferor of the trust property. However, for purposes of applying the generation-skipping transfer tax, the spouse who created the QTIP (or his or her fiduciary) may elect to treat the QTIP property as if no QTIP election had been made. In such instance, the spouse *491 who created the QTIP is the transferor and his (or her) GST exemption may be allocated to the QTIP trust. If this special election is not made, only the beneficiary spouse’s GST exemption can be allocated to the trust. It is noted parenthetically that Mrs. Choate is not the grandmother of Mr. Choate’s grandchildren.
On the death of the spouse who is the QTIP beneficiary, there is a generation-skipping transfer if the trust property passes to a skip person (e.g., to grandchildren). It is not certain, however, which type of generation-skipping transfer occurs. It may be considered a direct skip since it is subject to estate tax in the surviving spouse’s estate or it may be considered a taxable termination because the surviving spouse’s interest terminates and thereafter a skip person is interested in the property and no one in a higher generation has any interest in the trust. But the characterization of the transfer does not appear to affect the requested construction.
The relevant provisions of testator’s will follow:
By article fifteenth, Mr. Choate created out of his entire residuary a marital trust for the income benefit of his wife, Eloise. Upon her death, if his son and only child, Arthur B. Choate (Tim), is then living, the trust remainder is divided into two equal shares.
One share is continued in further trust for the income benefit of son Tim. Upon Tim’s death, the principal is continued in further trust for the income benefit of Tim’s children. This latter transfer upon Tim’s death to a trust for testator’s grandchildren would be a generation-skipping transfer subject to GST.
The other one-half share of the remainder of the marital trust is to be held in trust during Tim’s life for the sprinkling income benefit of his children. Such transfer to a trust for grandchildren is subject to the GST upon Mrs. Choate’s death.
All trusts terminate upon the death of the grandchildren (subject to a perpetuity saving provision) with remainder passing to their issue (testator’s great-grandchildren). This termination is also a generation-skipping event subject to tax.
Petitioners are concerned that under a literal reading of Mr. Choate’s will they are required to fund a single QTIP trust which, as discussed below, would significantly erode the GST exemption.
If Mr. Choate’s will establishes a single QTIP trust, the GST would be imposed on the widow’s death on the trust for the *492 grandchildren and on son Tim’s death on the trust for his benefit. As previously mentioned, Mr. Choate’s $1 million exemption must be allocated no later than the filing of his Federal estate tax return or it is lost (26 USC § 2631).
The allocation of the $1 million exemption is complicated. The allocation of the exemption actually affects the tax rate (not property subject to tax) and thus exempts a fractional share of the transferred property from the GST.
The process provided by the Internal Revenue Code (26 USC § 2641) to determine the GST begins with the "applicable fraction” consisting of the GST exemption as the numerator and the value of the transferred property as the denominator. The statute then provides a method whereby the $1 million exemption reduces the tax rate. This is accomplished by use of the "inclusion ratio” which is one minus the applicable fraction. The inclusion ratio is in turn multiplied by the GST rate (currently 55%) to determine the tax rate. The inclusion ratio thus lowers the tax by reducing the GST rate. It represents the percentage of nonexempt assets in the transfer.
If the $1 million exemption is applied in Mr. Choate’s estate to the QTIP as a single trust, the applicable fraction consists of a numerator of $1,000,000 (the GST exemption) over a denominator of $7,500,000 (the value of the trust). The inclusion ratio would be 86.67% (1 minus 1/7.5) of 55% (the tax rate) on every transfer from the trust subject to the GST. The computation results in a tax rate of 47.66%.
Based upon normal life expectancy, it is likely that Mrs. Choate will die first. Article twenty-fourth of Mr. Choate’s will provides that upon his widow’s death her executors may request that Mrs. Choate’s estate tax on the QTIP be paid from that trust. It is estimated that this tax will reduce the trust fund (the generation-skipping transfers) by about 60%, viz., from $7.5 million to $3 million. However, the inclusion ratio (established on the filing of Mr. Choate’s Federal estate tax return) may not be changed even though the $1 million exemption at the time of the widow’s death actually represents 1/3 and not 1/7.5 of the assets subject to the GST.
Under such circumstances, the value of the $1 million exemption is significantly eroded. If the inclusion ratio could be recalculated on the widow’s death, Mr. Choate’s GST would be reduced from 86.67% to 60.66% of the 55% tax rate.
It is possible, however, to have a zero inclusion ratio and a zero applicable GST tax rate. A zero GST rate or fully exempt *493 trust will occur whenever the amount of the GST exemption and the principal amount of the trust are equal. For example, if the entire $1 million GST exemption is applied to a QTIP trust of $1,000,000 the applicable fraction will be 1 which subtracted from 1 yields an inclusion ratio of 0. The applicable GST rate will also be zero (55% x 0). Thus a $1,000,000 trust would be free from generation-skipping taxation from the initial transfer through all subsequent generation-skipping transfers. All future appreciation in the value of the principal will also escape generation-skipping taxation. Moreover, if the widow’s estate tax is paid from another trust, the full $1 million exemption is preserved.
The petitioners request that Mr. Choate’s will be construed as creating a trust for the grandchildren shielded from payment of tax in the widow’s estate and totally exempt from the GST. This can be accomplished by separating the single QTIP trust into three separate QTIP trusts ab initio. The beneficiaries of each trust would be entitled to precisely the same interest in the three trusts as they are entitled to in the single trust.
Under petitioners’ proposal, trust A would be a trust of one half of the residuary estate to continue after Mrs. Choate’s death for the income benefit of son Tim.
Trust B would be a trust for exactly $1 million out of the residuary to continue after Mrs. Choate’s death for the income benefit of Tim’s issue. The principal of trust B would not be diminished by the payment of estate taxes on Mrs. Choate’s death, but would be preserved for Mr. Choate’s grandchildren. These taxes would be paid out of trust C and if necessary trust A.
Trust C would be a trust of one half of the residuary, less $1 million, to continue after Mrs. Choate’s death for the income benefit of Tim’s issue.
The executors would then allocate Mr. Choate’s entire $1 million GST exemption to trust B, the $1 million QTIP trust. The applicable GST tax rate for this trust would be zero. Furthermore, the full value of the GST exemption would be preserved for the benefit of Mr. Choate’s grandchildren and his even more remote issue.
It is clear that this proposed reformation would not in any way alter testator’s dispositive scheme under his will. All interested persons under the present single QTIP trust would remain entitled to precisely the same interest as he or she would have if the will were not construed as proposed.
*494 This court has the power to construe and reform testator’s will if the will, as written, does not carry out his intention, provided such reformation does not attempt to alter tax consequences retroactively or to change in any respect the dispositive provisions of his will.
In this regard, it is noted that petitioners do not seek to avoid the new GST on the direct skip to the trust for the grandchildren. Rather, they seek reformation of the QTIP trust to permit them to preserve the $1 million GST exemption when applied to such grandchildren’s trust.
New York courts have on many occasions reformed wills to effect testator’s intention to take full advantage of available tax deductions and exemptions. Mr. Choate took full advantage of the marital deduction by providing that Mrs. Choate’s trust could be qualified as a QTIP trust. He also took advantage of the exemption provided under the old GST for direct skips. New York law, moreover, presumes that a testator intends to take full advantage of the deductions and exemptions authorized by law (Matter of Lepore, 128 Misc 2d 250; Matter of Olson, 77 Misc 2d 515).
After the 1969 Tax Reform Act, courts reformed trusts in order to qualify them for the charitable deduction under the new requirements for charitable remainder trusts (Matter of Stalp, 79 Misc 2d 412; Matter of Larus, 78 Misc 2d 122). Similarly, courts have permitted reformation of provisions of old wills to permit taking advantage of the later enacted unlimited marital deduction (Matter of Khadad, 135 Misc 2d 67; Matter of Lepore, supra).
In other instances, our courts have construed tax apportionment clauses in wills where literal application of their provisions would clearly frustrate testator’s intention (see, Matter of Gordon, 134 Misc 2d 247; also, Gibbs and Ordover, Tax Apportionment & QTIP Elections, NYLJ, May 4, 1987, at 1, col 1).
In order to construe or reform wills, courts in the past have been required to separate single trusts into two or more trusts. The doctrine of "severability of trusts”, a product of the broader doctrine of "salvage” under the rule against perpetuities, was frequently used under the pre-1958 "two-life” rule. It was resorted to in order to separate single trusts whose duration was measured by more than two lives into a two-lives or a single-life trust (Matter of Buttner, 243 NY 1; Matter of Horner, 237 NY 489; Matter of Mount, 185 NY 162).
*495 In other instances, wills have been reformed to authorize the splitting of a single trust into two trusts to allow one to qualify for the charitable deduction. In Matter of Romita (134 Misc 2d 410), the court authorized the separation of trusts to permit a closely held corporation to qualify for the subchapter S election. In Matter of Stalp (supra), the court separated a single charitable remainder trust into two separate trusts to permit the larger one to qualify for the charitable deduction. In Matter of Kander (115 Misc 2d 386), the court separated trusts in order to allow each to qualify for the charitable remainder trust deduction.
Finally, it is appropriate to allocate the tax on the widow’s estate to a taxable trust because the rationale of tax apportionment is that the benefit of a tax exemption inures to the bequest which generates it (see, Matter of Gordon, supra).
All interested parties, including the guardian ad litem for the two infant grandchildren, consent to the application. The guardian ad litem, after thorough consideration, reports that there is significant benefit to her wards in separating the marital trust to create a wholly tax-exempt trust.
Based upon all the foregoing, the court authorizes the requested reformation and construes Mr. Choate’s will accordingly.
The court expresses its appreciation to the guardian ad litem, Mildred Kalik, Esq., for her excellent report which was helpful in the preparation of this opinion.