OPINION OF THE COURT
John M. Thomas, S.
The executors and trustees under the last will and testament of Edith E. Lewis petition this court for construction and reformation of the testatrix’s will pursuant to SCPA 1420 (1). The decedent, Edith E. Lewis, died on July 8, 1988 leaving a *619 last will and testament dated October 25, 1983 which was admitted to probate by this court on July 28, 1988.
Pursuant to the terms of the will a $250,000 bequest is made to each of the decedent’s five grandchildren. The will further provides that if a grandchild has not reached the age of 35 years at the time of the distribution of the bequest, it is to be held in trust until the grandchild attains that agé or until he or she dies, whichever first occurs. One half of the principal of each trust is distributed when the grandchild reaches age 30 and the balance is payable at age 35. In the event that the beneficiary predeceases age 35, the will provides for a gift over to living issue of the grandchild. At the time of the testatrix’s death her five grandchildren were all living and over the age of 18 years, but none had attained the age of 35 years. There is one great grandchild for whom the court has appointed a guardian ad litem in this proceeding.
The purpose of the request reformation is to bring the transfer within the shelter of the exemption of the generation-skipping transfer tax (GST) of the Tax Reform Act of 1986 (Pub L 99-514) which retroactively repealed the former Tax Reform Act of 1976. At the time the will was prepared in October of 1983 there was a Federal generation-skipping transfer tax under chapter 13 of the Internal Revenue Code of 1954 (26 USC) as amended which was enacted into law by the Tax Reform Act of 1976. (Pub L 94-455.) Then section 2611 (b) of the 1954 Code as amended defined "generation-skipping trusts” as any trust having younger generation beneficiaries of more than one generation in the same trust. Since in the instrument now before the court each trust has a single beneficiary in one generation, they were not generation-skipping trusts by definition under the 1954 Code and as such were not taxed. Additionally, section 2613 (b) (6) of the 1954 Code provided a $250,000 exemption for each transfer to a grandchild. Therefore, it is readily apparent that the decedent’s will had been carefully crafted to avoid the generation-skipping tax at the date that the instrument was drawn.
The Tax Reform Act of 1986, renaming the 1954 Code the Internal Revenue Code of 1986, repealed the existing GST tax and imposed a new GST tax with a broadened definition of a generation-skipping transfer. (See, 1986 Internal Revenue Code [26 USC] §§2611, 2613 [a].) The trusts established by Mrs. Lewis’s will in favor of her grandchildren under the new generation-skipping tax were "direct skips” and, therefore, subject to the tax unless they came within the applicable *620 exemptions. The first exemption is a $1,000,000 exemption in the aggregate, per transferor. After allocating this exemption equally to the five trusts, the resulting generation-skipping transfer tax is $137,500. The Tax Reform Act of 1986 has a special exclusion of $2,000,000. (Tax Reform Act of 1986 [Pub L 99-514] § 1433 [b] [3].) The temporary regulations on the application of the $2,000,000 exclusion were not adopted until March 14, 1988 (Treas Dec 8187) and section 26.2601-1 (d) (2) of those temporary regulations (26 CFR) reserved explanation of how the exclusion would apply to transfers in trust. Final clarification did not occur until after the testatrix had died in the form of the Technical and Miscellaneous Revenue Act of 1988 (TAMRA; Pub L 100-647) became law on November 10, 1988. TAMRA provides, inter alia, that the $2,000,000 exemption cannot apply to a generation-skipping transfer in trust unless the assets of the trust will be includable in the estate of the grandchild, should the grandchild die before the trust is terminated. Thus, under the decedent’s will which provides for a gift over to living issue of the grandchild in the event the grandchild should predecease the age of termination at 35, the $2,000,000 exclusion does not apply.
The petitioners seek to reform the trust to provide that in the event a grandchild beneficiary dies before age 35, he or she be given a general power of appointment so that the principal, plus accrued interest, in the trust of a deceased grandchild, would be taxable in the grandchild’s estate, thereby qualifying the trust for the $2,000,000 exclusion under TAMRA (Pub L 100-647) § 1014 (h) (3) (A) (amdg Pub L 99-514 § 1433 [b] [3]).
The law of the construction and reforming of wills in New York is grounded on the principal of seeking and implementing the intent of the testator. Once that intent is determined, it must prevail over all considerations. (Matter of Scott, 8 NY2d 419; Matter of Howe, 15 AD2d 396, affd 12 NY2d 870.) The testator’s intent must be ascertained not from a single word or phrase, but from a sympathetic reading of the will in its entirety, and in view of all of the facts and the circumstances under which the provisions of the will were prepared. (Matter of Fabbri, 2 NY2d 236; Matter of Emberger, 31 AD2d 651, affd 25 NY2d 924; Matter of Thall, 18 NY2d 186.) As the Court of Appeals states in Matter of Thall (supra, at 192) "[t]he first rule of testamentary construction, of course, is that a will be interpreted to reflect the actual intention of the testator and the second that this intention be ascertained *621 from a reading of the document as a whole. * * * If a 'general scheme’ be found, it is the duty of the courts to carry out the testator’s purpose”.
Mrs. Lewis’s will, after several general bequests of specific amounts of cash to named individuals and charities, provides for the five $250,000 bequests to her grandchildren, makes a general bequest of designated stock to a family foundation, and passes the residuary estate evenly divided between her son and daughter. From a sympathetic reading of this instrument, it is clear that the focal points of testamentary intent are the decedent’s grandchildren, the family foundation and her own children. Lastly, but of equal importance, is the desire of the testatrix to minimize taxation and in particular, the generation-skipping tax. Concentrating for the moment on the gift to the grandchildren, which is the concern of this proceeding, it is important to note the enjoyment of the principal gift to each grandchild is postponed only until they attain the age of 35; the age in which the testatrix obviously felt the grandchildren would be of sufficient maturity to possess fiscal responsibility. The gift over to the great grandchildren was clearly only a safety net in the remote possibility that a grandchild should die before 35. Thus, even though the request reformation of the will to a power of appointment rather than a gift over may result in a great grandchild not receiving through this will, that possibility, even under the original language was so distant that in this court’s view it did not enter into the intentional testamentary plan of the testatrix.
The intention to shelter the transfer from the generation-skipping tax as it then existed is amply demonstrated by the facts that the bequests were limited to $250,000 each, the exact amount of the then exemption, and that there was only one beneficiary to each trust.
There are at least three types of situations where the Surrogate’s Court has construed and reformed wills with the effect of altering or amending dispositive plans for the purposes of effecting the tax saving or avoiding intestacy. One such line of cases concerns construction and reformation to take advantage of the change in the rules of marital deduction. In Matter of Lepore (128 Misc 2d 250) the court eliminated one of the trusts in a two-trust, marital deduction will in order to take advantage of the unlimited marital deduction enacted in the Economic Recovery Act. The court in analyzing the will concluded that the instrument reflected a testamen *622 tary plan which had as its paramount concern the interest of the testator’s spouse specifically to give her a largest possible legacy outright, while minimizing estate taxes. The court found that the remaindermen were of secondary concern and also noted that it is presumed that all testators desire, whenever possible, to preserve all allowable estate tax exemptions, citing Matter of Olson (77 Misc 2d 515). (See also, Matter of Khadad, 135 Misc 2d 67, and Matter of Friedman, NYLJ, May 11, 1978, at 12, col 5, where a marital deduction was preserved by the insertion of a general power of appointment.)
Another group of cases in which the courts have readily reformed dispositive plans are the charitable deduction cases, since many wills do not meet the definition of a charitable remainder annuity trust or a charitable remainder unitrust as defined by Internal Revenue Code (26 USC) § 664. In Matter of Barker (82 Misc 974) Surrogate Di Falco reformed a will which provided that the beneficiaries would receive all the income from stock in two corporations for life and upon their death, the stock would pass to two separate charities. The court reformed the will by establishing an 8% unitrust for the income beneficiary, which although it eliminated the potential for the income beneficiary to receive more than 8% in the aggregate of such initial net market value of the property, in the court’s opinion preserved the general charitable intent of the testatrix. The courts have also not hesitated to split one trust into two where it was necessary to qualify for the charitable remainder as a deduction for Federal tax purposes. In Matter of Larus (78 Misc 2d 122) the court divided a single residuary trust into two separate trusts to qualify with the estate tax deduction where the reading of the entire will disclosed that the purpose of the decedent was to create a charitable remainder trust which would qualify for the tax deduction and such was not possible without creating two trusts. The court, in so doing, noted that although the execution of the will and the death of the testator had occurred after the effective date of the Tax Reform Act of 1969, the regulations promulgated thereunder (26 CFR former 1.664-3 [a] [6] [i]) were not adopted until after the testator’s death. This is precisely the uncomfortable circumstance in which the estate before the court finds itself. (See also, Matter of Stalp, 79 Misc 2d 412.) In Matter of Rayvid (88 Misc 2d 372) where the draftsman failed to comply with the provisions of the 1969 Tax Reform Act, the court reformed a single trust into two separate trusts, one of which was a 6% charitable remainder *623 unitrust in accordance with section 664 (d) (2) of the Internal Revenue Code.
The specter of intestacy also generates reformation of wills by the New York courts. See Matter of Bellows (103 AD2d 594) which passed the corpus of a trust to a deceased beneficiary’s nephews and nieces rather than permitting the trust to pass to intestacy, since the beneficiary died without issue or living siblings.
Finally, in Matter of Choate (141 Misc 2d 489), Surrogate Roth permitted the reformation of a will in order to totally exempt the estate from the generation-skipping transfer tax by separating a single qualified terminal interest property (QTIP) trust into three separate QTIP trusts in order to take full advantage of the million dollar exemption provided under Tax Reform Act of 1986 § 1433. Although Matter of Choate (supra) does not alter a dispositive plan, it, nevertheless, is founded on the same principal that a testator is presumed to intend to take full advantage of all deductions and exemptions authorized by law. (See, Matter of Lepore, supra; Matter of Olson, supra )
The guardian ad litem, in a thorough and comprehensive report to the court, urging approval of the requested reformation, aptly observes that the saving in tax dollars will result in the great grandchild’s father having more funds available to support the infant.
Thusly, although it appears the requested reformation alters the dispositive plan, as previously noted, the gift over language under the will is merely an emergency provision and the early age of vesting clearly establishes the intent to principally benefit the grandchildren. The proposed change leaves that purpose completely intact and, though this case may approach the edge of the precipice, it nevertheless stands on the firm ground of testamentary intent.
It is, therefore, the decision of this court that the petition is granted; and that article twelfth of the last will and testament of Edith E. Lewis is reformed to read as follows:
"In the event that any beneficiary shall die at any time before the termination of the trust created for his or her benefit under this Article, I direct that such trust shall cease and terminate upon such death and my trustee shall pay over and distribute the then principal of such trust to such person or persons (the word 'person’ shall be deemed to include, without limitation, the estate of a beneficiary and the credi *624 tors of the estate of a beneficiary) in such shares and in such manner, whether outright or in lesser estates, in trust or otherwise, as the beneficiary alone may by will appoint, by specific reference to this power, and in default of such appointment or insofar as the beneficiary shall not effectively appoint all of the principal of such trust, to the issue of the beneficiary then surviving, per stirpes, but if there shall be no issue of such beneficiary surviving, in equal shares to my grandchildren then surviving (provided, however, that in the case of any such grandchild of mine for whose benefit a trust is then in existence under the provisions of this Article, I direct that his or her share shall be added to the principal of such trust instead of being paid over to him or her).”