*330 OPINION OF THE COURT
S. Peter Feldstein, S.
This is a proceeding pursuant to SCPA 1420 (1), seeking construction and reformation of the last will and testament of William M. Dunlop, who died on January 4, 1992, leaving a last will and testament dated October 3, 1991, which was admitted to probate in the Hamilton County Surrogate’s Court on February 19, 1992. The petitioner, Margaret H. Visscher, is a coexecutrix of said last will and testament, letters testamentary having been duly issued to her and to Margaret E. Dunlop, the testator’s surviving spouse, on February 19, 1992.
After numerous preresiduary bequests, the balance of testator’s estate was directed to be paid into a trust known as the "William M. Dunlop Testamentary Trust”. (Paragraph fourth [A].) The will further directed (paragraph fourth [B] [1] [c]) that the executors certify to the trustees the fraction of the trust qualifying for the marital deduction, and directed the trustees to divide the trust into a marital deduction and a nonmarital deduction share based upon such fraction. Both trusts were to be distributed in exactly the same manner, except that any invasions of principal were directed to be distributed from the marital deduction share before invasion of the nonmarital deduction share. Upon the death of the decedent’s spouse, the trustees were directed to distribute the remainders of the trusts to certain named persons, including five grandnephews of the decedent, who each would receive 5% of the balance of the trust assets. Those same five grandnephews are also the recipients of specific bequests under the will totaling $125,000.
The Tax Reform Act of 1986 (Pub L 99-514) created a new generation-skipping transfer tax (hereinafter GST) which is imposed upon certain transfers to persons two or more generations below the transferor. All of the distributions to the five grandnephews are subject to the GST, including the specific bequests of $125,000, and the distributions to be made upon the termination of both the marital and nonmarital trusts referred to above. Each transferor, including the decedent herein, is allowed a GST exemption of $1,000,000. Ideally, therefore, wills should be drafted to take full advantage of the $1,000,000 GST exemption for each transferor, which in this case would include both the decedent and his spouse.
However, under decedent’s will as drafted, only the specific bequests of $125,000 to the grandnephews of the testator will *331 qualify for the GST exemption. Because of the peculiarities of the Federal estate tax law, and certain elections which the estate can make thereunder, the distributions to the grandnephews upon the termination of the testamentary trusts will be deemed made by decedent’s spouse, and will not be available for inclusion in decedent’s GST exemption. (This court will not discuss in detail the complicated methodology imposed by the Federal estate tax law, as those matters are adequately set forth in the petition and memorandum of law submitted herein.) Petitioner is proposing that the court reform and reconstitute decedent’s will so that the full $1,000,000 GST exemption will be available to decedent’s estate, thus preserving the widow’s full $1,000,000 GST exemption for her estate. It is proposed that the nonmarital trust be divided into two separate trusts, and that the marital trust be divided into three separate trusts. By utilizing certain elections with respect to the five separate trusts, the $1,000,000 GST exemption would be preserved in both estates.
Petitioner projects that the proposed reformation to create the five separate trusts, and the utilization of the elections to be made with respect to those trusts, would result in a net tax saving, in the estate of the decedent’s widow, of approximately $186,000. Because the marital deduction available in decedent’s estate has been utilized to its maximum extent, there is no Federal estate tax on decedent’s estate.
For the reasons set forth below, this court determines that the construction and reformation sought by petitioner should not be granted.
The basic rule in construing a will is to determine the testator’s intention as expressed in the entire will. (See, e.g., Matter of Watson, 262 NY 284; Matter of Bisconti, 306 NY 442; Matter of Fabbri, 2 NY2d 236; Matter of Thall, 18 NY2d 186; Matter of Kosek, 31 NY2d 475; Matter of Walker, 64 NY2d 354.)
Petitioner alleges that the proposed reformation of decedent’s will, to create five separate testamentary trusts, instead of two trusts, would carry out the intention of the decedent as expressed in his will. (This court notes that the proposed reformation would not in any way alter the dispositive provisions of the will. Estate taxes payable upon the death of decedent’s widow would be borne by the various beneficiaries in the exact same proportion as if reformation had not occurred.) Petitioner points to two provisions in decedent’s will *332 which allegedly express decedent’s intention to take full advantage of all tax deductions and exemptions. Paragraph fourth (B) (1) (c) provides, in part, "I direct that all invasions of principal shall be distributed from the marital deduction share before any such invasions are distributed from the nonmarital deduction share.” Paragraph ninth (N) of the will confers upon the fiduciary the power "To take a course of action which will obtain the maximum tax benefits for my Estate and my said spouse’s Estate in the event my said spouse does not survive me or is not living on the due date of the filing of my Federal Estate Tax Return.” Petitioner argues that these clauses express the intention of petitioner to minimize the effect of the GST on the estate of decedent’s spouse. This court does not agree with that interpretation.
This court has the power to reform decedent’s will herein only if the will, as written, does not carry out his intention. The courts have consistently held, however, that where the intention of the testator can be determined from the will, the provisions of the will should not be changed. In Matter of Watson (supra, at 293) the Court stated, "The intention of a will-maker is to be found in the words used in the will, and when these are clear and definite there is no power to change them.” In Matter of Fabbri (supra, at 244) the Court stated, "There are cases where the language employed is so clear and unmistakable as to convey only one meaning even when read in its proper setting. In such cases the intent evidenced by the language is given effect without reference to external circumstances or rules of construction. In these instances only one meaning is reasonable, and a variance from the language would constitute not an interpretation but a refabrication of the will by the court.” In Matter of Walker (supra, at 357-358) the Court stated, "Analysis starts with the general rule that the law permits a person possessing testamentary capacity to dispose of property to any person in any manner and for any object or purpose so long as such disposition is not illegal or against public policy * * * The court’s job in overseeing the administration of a testator’s estate is to implement the testamentary plan the testator intended, determining intent from the words used in the will * * * and construing them according to their everyday and ordinary meaning * * * Once the testator’s intent is determined, it must control the disposition of the property unless it is contrary to some public policy or established law” (citations omitted).
Petitioner’s argument here is that the decedent’s will ex *333 pressed an intention, at least by implication, to utilize the GST exemption in his estate so as to minimize the taxes which would be imposed on his widow’s estate. Petitioner relies, to a great extent, on Matter of Choate (141 Misc 2d 489) . In that case, Surrogate Renee R. Roth, of New York County, in a decision dated October 17, 1988, permitted reformation of the will of Arthur O. Choate, Jr. in a manner similar to that sought here, and for the exact same purpose. The court found that the testator intended to take full advantage of available tax deductions and exemptions, stating, "Mr. Choate took full advantage of the marital deduction by providing that Mrs. Choate’s trust could be qualified as a QTIP trust. He also took advantage of the exemption provided under the old GST for direct skips” (at 494). This court believes that Choate (supra) is distinguishable for two separate but related reasons.
In the first place, the Choate will was drafted and executed prior to the Tax Reform Act of 1986, which imposed a major change in the application of the GST. The court specifically stated, "Mr. Choate’s will contains a direct skip to a trust for his grandchildren, which was not subject to the old GST when the will was executed. Mr. Choate’s grandchildren are therefore adversely affected by the change in the law” (supra, at 490) . In the case at bar, the Tax Reform Act of 1986 had been on the books for nearly five years prior to the execution of decedent’s will.
Secondly, as set forth in the language quoted above, the Choate will took advantage of the exemption under the prior GST, which indicated an awareness of the GST. In the case at bar, however, there is no indication in the will that petitioner was at all aware of the GST. This is conceded in the memorandum of law submitted by petitioner’s attorney where it was stated, "The GST tax problem or issue was simply unforeseen by the decedent.”
This court believes that in order to find that the testator expressed some intention with respect to the GST, there must be some indication that testator was aware of the existence of a GST issue. This court does not find any evidence of such awareness in the language of the will.
A testator, or at the very least the draftsman of a will, is expected to be aware of applicable laws which affect the testamentary scheme, including tax laws. The will should then be drafted in a manner to express the intention of the testator *334 with respect to such applicable laws. In this case, the will was apparently drafted without any regard at all for the GST. In Watson (supra, at 299), the Court in construing the clause at issue in that will stated, "We take wills as we find them, and, unless contrary to some statute, give them effect as written. This is what the lawyer who drew the Will has caused Miss Watson to say is her intention.” In the present case, the draftsman did not cause the testator to express any intention at all with respect to the generation-skipping tax.
As stated above, petitioner relies on two specific clauses in the will to assert that the decedent intended to minimize the application of the GST in his widow’s estate. The first cited clause, paragraph fourth (B) (1) (c), however, only relates to the marital deduction. There is no question relating to that issue. Decedent’s widow was the primary beneficiary of his estate. It is clear that decedent intended to maximize the marital deduction available to his estate upon his death. That intention is fully and completely expressed and is being carried out by his executors. The intent to maximize the marital deduction in a decedent’s estate is not at all the same as an intent to minimize generation-skipping taxes in a subsequent estate.
The second clause, paragraph ninth (N), is similarly unavailing. That clause did direct the fiduciary to take a course of action to obtain maximum tax benefits for both the testator’s estate and the estate of his spouse, but only in the event that decedent’s spouse did not survive him. By implication, that clause did not authorize the fiduciaries to obtain maximum tax benefits where the spouse survived the decedent, as was the case. This court does not know why the decedent provided that maximum tax benefits were not to be sought if his wife survived him. Perhaps the decedent and the draftsman believed that the surviving widow would be able to take appropriate steps, after the death of decedent, to obtain the maximum tax benefits available. On the other hand, perhaps the limitation on the power to obtain maximum tax benefits was a mistake. In any event, this court will not substitute its judgment for that of the testator, and will not rewrite his chosen language. The drafting of a will, especially with regard to the tax implications, is an art requiring great skill. As stated by the Court in Watson (supra, at 298), "If as much effort were spent in preparing a will as is devoted to either breaking or construing it, we would not have all these perplexing questions.”
*335 Petitioner also claims that there is a presumption that the decedent intended to take full advantage of all deductions and exemptions authorized by law, citing Matter of Choate (supra), Matter of Lepore (128 Misc 2d 250), and Matter of Olson (77 Misc 2d 515). The presumption referred to, however, apparently originated in Matter of Olson (supra) which was a case involving the apportionment of estate taxes among the will beneficiaries. The presumption referred to in that case was in fact the statutory presumption which is set forth in EPTL 2-1.8 (c) (2). EPTL 2-1.8 deals only with the apportionment of Federal and State estate taxes among various estate beneficiaries. In Matter of Lepore (supra) the court merely quoted the language from Matter of Olson (supra) setting forth the statutory presumption of EPTL 2-1.8. That statutory presumption has no application at all to the issues involved in the case at bar. We are not here dealing with an apportionment of estate taxes among various beneficiaries. This court finds that there is no presumption that the will of the decedent, which never mentions or even alludes to the generation-skipping tax, sets forth an intent to minimize such tax in the estate of his surviving spouse.
The result reached by this court may seem harsh. Perhaps it is. However, there may well be ways for decedent’s surviving spouse to adjust her own estate plan so as to attain maximum tax benefits. Such a course of action would certainly be appropriate. It is inappropriate, however, for this court to be the mechanism to create a new estate plan for the testator and his widow. If such were the duty of this court, what would be the limit to its functions in that regard? Would the court always be bound to reform each and every will of every testator so as to achieve maximum tax benefits, no matter what the will stated? If that were the case, the courts would be overwhelmed with such requests for reformation, and the rule of law respecting testamentary dispositions would be undermined.
It is one thing to seek reformation where an important tax law, or other statute, has been changed to adversely affect a carefully drawn estate plan. To permit such reformation, in every case, because the testator or his draftsman was uninformed or overlooked something, is beyond the power of the court and is unwarranted.
Based on the foregoing, it is the determination of this court that the relief sought in the petition herein should be denied.